UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

BVS ACQUISITION CO., LLC,
a Delaware Limited Liability Company, AND
ARTHUR W. HOOPER, JR., an
individual,

        Plaintiffs,

CASE NO.:

v.

RORY A. BROWN, an individual,
AND JEROME M. ELLIS, an
individual,

        Defendants.

_____/

## COMPLAINT

Plaintiffs BVS Acquisition Co., LLC and ARTHUR W. HOOPER, JR., by and through undersigned counsel, hereby sue Defendant RORY A. BROWN ("Brown") and Defendant JEROME M. ELLIS ("Ellis") and allege:

## PARTIES

1. Plaintiff BVS Acquisition Co., LLC ("BVS") is a Delaware Limited Liability Company with its principal place of business of business in Tarrytown, New York.

2. Plaintiff Arthur W. Hooper, Jr. is resident of Connecticut. Mr. Hooper is colleagues with Louis L. Ceruzzi, Jr. at Ceruzzi Properties, a real estate development company located in Fairfield, Connecticut.

3. Upon information and belief, Defendant Rory A. Brown is a resident of Palm Beach County, Florida.

4. Upon information and belief, Defendant Jerome M. Ellis is a resident of Palm Beach County, Florida.

## JURISDICTION & VENUE

5. This is a diversity action for damages in excess of $75,000 exclusive of interest, costs, and attorney's fees, arising from negligent misrepresentations made to Plaintiffs by Defendants in connection with Plaintiffs' investment in Lydian Private Bank ("Lydian Bank"), a private bank formerly located in Palm Beach County, Florida.

6. Pursuant to 28 U.S.C. § 1332, jurisdiction exists over Defendants in this Court because Defendants are subject to personal jurisdiction in this district and complete diversity exists between the parties.

7. Pursuant to 28 U.S.C. § 1391(a)(3), venue is proper in this judicial district because, among other things, Defendants are subject to personal jurisdiction in this district. Venue is also proper because the events giving rise to the claims alleged herein occurred within this judicial district.

## FACTS RELEVANT TO ALL CLAIMS

8. At all material times hereto, Lydian Bank was a bank headquartered in West Palm Beach, Florida with six branches located primarily throughout South Florida. Lydian Bank offered private banking and wealth management services. Upon information and belief, Lydian Bank was a subsidiary or affiliate of Lydian Holding Company ("LHC").

### *Mr. Hooper and Mr. Ceruzzi are Approached by Brown and Ellis on Behalf of Lydian*

9. In spring of 2008, Brown and Ellis engaged Mr. Hooper and Mr. Ceruzzi, a representative of BVS, in discussions about the quality and scope of wealth management services offered by Lydian Bank. At the time, Brown was chairman and CEO of Lydian Bank and Ellis was Executive Vice President of Lydian Bank. Upon information and belief, Brown was also chairman and CEO of LHC during the relevant time period.

10. As the result of the representations of Brown and Ellis, Mr. Hooper and BVS were persuaded to allow Lydian Bank to manage significant amounts of assets. In an exchange for these deposits, Lydian Bank extended lines of credit to Mr. Hooper and BVS and detailed individual investment programs were prepared for Mr. Hooper and BVS by William VanDresser, Lydian Bank's then-Senior Wealth Manager. Mr. VanDresser recommended a number of high-quality investments to Mr. Hooper and BVS.

11. Mr. Hooper and BVS' funds were kept liquid and maintained in investment accounts with or through Lydian Bank through the remainder of 2008 due to the financial crisis and other economic conditions which existed in the country at the time.

### *Brown and Ellis Solicit Plaintiffs' Investment in Lydian Preferred Stock*

12. In the spring of 2009, Brown and Ellis - on behalf of Lydian Bank - approached Mr. Hooper and Mr. Ceruzzi, as a representative of BVS, and recommended that, rather than invest pursuant to the individual investment programs that had been prepared for them, Mr. Hooper and BVS, should instead invest in Lydian Bank Preferred stock.

13. Specifically, in February 2009, Brown and Ellis recommended that Mr. Hooper and BVS invest the funds they deposited with Lydian Bank in Lydian Bank Series 2009A

Noncumulative Exchangeable Perpetual Preferred Stock (the "Preferred Stock") with eight percent (8%) noncumulative dividends per year.

14. Brown and Ellis repeatedly represented that Lydian Bank was a financially stable bank with good fundamentals that was adequately capitalized in ratio to its assets. Specifically, Brown and Ellis represented, among other things:

> a) that Lydian Bank was adequately capitalized in ratio to its assets and had a better capital ratio than other banks in its peer group;
>
> b) that Lydian Bank had adequate loan loss reserves;
>
> c) that Lydian Bank ranked in the top three banks in its peer group for performance;
>
> d) that the book value of the Lydian Bank stock was in excess of $20.00;
>
> e) that Lydian was "going public in 24 months" and that the offering price of the public execution would be at least two times book value; and
>
> f) that the conversion price for the preferred stock being offered would be approximately $20.00 per share.

15. Brown and Ellis also represented that, to the extent Mr. Hooper and BVS invested in the Preferred Stock, any loans made by Lydian Bank against the Mr. Hooper and BVS' respective lines of credits would not mature and that Lydian Bank would work with Mr. Hooper and BVS to extend any such loans to the extent necessary.

16. Brown and Ellis made these representations during two meetings with Mr. Hooper and Mr. Ceruzzi, as a representative of BVS, at Lydian, and the offices of Ceruzzi Holdings, in

4

Fairfield, Connecticut, as well as during a series of conference calls between, among others, Brown, Ellis, Mr. Hooper, and Mr. Ceruzzi in early 2009.

17. Brown and Ellis also agreed to provide Mr. Hooper and Mr. Cerruzi with the 2008 private placement memorandum upon which these representations were based. Brown and Ellis told Mr. Hooper and Mr. Ceruzzi that investors would realize a significant return on the respective capital investments. Based upon these and other representations, Mr. Hooper and BVS – at Mr. Ceruzzi's direction – agreed to purchase the Preferred Stock.

18. On May 15, 2009, Mr. Hooper and BVS received Lydian's Private Placement Memorandum regarding the offering of the Preferred Stock. *See May 15, 2009 Private Placement Memorandum attached as Exhibit A.* On June 1, 2009, Mr. Hooper and BVS received a revised private placement memorandum which contained terms substantially similar to the terms contained in the May 15, 2009 memorandum and which confirmed the representations made by Brown and Ellis. *See June 2, 2009 Private Placement Memorandum attached as Exhibit B.*

19. Specifically, the June 2, 2009 Private Placement Memorandum provided:

> **No person other than Rory Brown, James Meany, Chris Boldman, Jerome Ellis, Brian Mahoney and Elizabeth Vera had been authorized to give any information or to make any representation other than the information and representations contained in this Memorandum in connection with the Offering and, if given or made, such other information or representation must not be relied upon as having been authorized by the Bank.**

*See Exhibit B at ii (emphasis in original).*

20. For reasons unknown to Mr. Hooper and BVS, Brown and Ellis insisted that the transaction be completed before July 1, 2009.

5

21. On June 22, 2009, because, neither Mr. Hooper, nor Mr. Ceruzzi or BVS, had received a copy of the 2008 private placement memorandum at that time, Mr. Hooper sent a letter to Ellis enclosing, among other things, his subscription agreement in connection with the purchase of the Preferred Stock and advising that such documents should be held in escrow until the parties could complete their discussions. *See June 22, 2009 Letter enclosing Hooper Subscription Agreement attached as Composite Exhibit C.*

22. Mr. Hooper sent a similar letter to Ellis enclosing, among other things, BVS' subscription agreement in connection with the purchase of Lydian Convertible Noncumulative Perpetual Preferred Stock on June 23, 2009 and also advised that such documents should be held in escrow. *See June 23, 2009, Letter enclosing BVS Subscription Agreement attached as Composite Exhibit D.*

23. Specifically, the subscription agreement provides that Mr. Hooper and BVS were entitled to:

> ask questions to and receive answers from **Rory Brown,** James Meany, Chris Boldman, **Jerome Ellis**, Brian Mahoney and Elizabeth Vera concerning [Lydian's business] and the terms and conditions of this investment.

*See Subscription Agreements attached as part of Composite Exhibits C and D at § 3.3, respectively (emphasis added).*

**Ellis Confirms that Mr. Hooper and BVS Can Rely on His Express Representations Regarding the Purchase of Stock in Lydian Bank**

24. Also on June 23, 2009, and because he and BVS had yet to receive the materials promised relating to, among other things, the conversion rate for the preferred stock, Mr. Hooper advised Ellis that he and BVS were relying upon Brown and Ellis' oral representations in deciding to invest and sent Ellis a letter confirming same. Specifically, Mr. Hooper advised Ellis

BROAD and CASSEL
One Biscayne Tower 2 South Biscayne Boulevard Suite 2100 Miami, Florida 33131 305.373.9400
4827-0333-4926.6
46246/0001

that Mr. Hooper and BVS were expressly relying on the representations and covenants made by Brown and Ellis, as individuals named in the Subscription Agreement as persons authorized to make such representations on behalf of Lydian Bank. *See June 23, 2009 Letter attached as Exhibit E.*

25. Ellis acknowledged that Mr. Hooper and BVS were relying upon the oral representations and confirmed in writing the representations made by Brown and Ellis and upon which BVS and Mr. Hooper were relying. *See June 23, 2009 Email attached as Exhibit F.*

26. Based upon Ellis' express assurances, Mr. Hooper and BVS completed the purchase transactions for Lydian of Lydian Convertible Noncumulative Perpetual Preferred Stock on June 22, 2009 without having received a copy of the 2008 private placement memorandum.

### *Ellis and Brown's Misrepresentations Begin to Come to Light*

27. In the late spring of 2010, Ellis approached Mr. Hooper and BVS regarding the possibility of buying out, at par, a preferred shareholder of Lydian Bank who owned approximately $15 million in shares of Series 2008A Noncumulative Exchangeable Perpetual Preferred Stock. In connection with discussions regarding this proposed transaction, the 2008 private placement memorandum was first disclosed to Mr. Hooper and BVS.

28. The conversion price reflected in the 2008 private placement memorandum was $5 to $6 higher than what Brown and Ellis had previously represented as a term of the Preferred Stock purchase transaction. This conversion price was materially contrary to the representations made by Brown and Ellis to Mr. Hooper and BVS in connection with their purchase of Lydian Bank Preferred Stock almost a year earlier.

29. On or about July 15, 2010, Brown advised Mr. Hooper and BVS that Lydian Bank was suspending dividend payments. Notwithstanding the suspension of payments, Brown and Ellis represented to Mr. Hooper and BVS that Lydian Bank would make up any missed dividends.

30. Thereafter, the Office of Thrift Supervision issued an Order to Cease and Desist which ordered Lydian to cease and desist from any action deemed by OTS as having, among other things, caused or aided and abetted "unsafe or unsound bank practices." *See OTS Order attached as Exhibit G.*

31. Specifically, among other things, the OTS determined:

   a) that Lydian Bank had been operated with an "inadequate level of capital protection for the volume, type, and quality of assets held by the Association;"

   b) that Lydian Bank had been operated without "an adequate level experienced and qualified managers and lending staff" and failed to "establish and implement an appropriate management succession plan"; and

   c) that Lydian Bank had been operated "with a board of directors that has failed to exercise adequate supervision over and provide adequate direction to management of the Association to prevent unsafe and unsound banking practices and violations of laws or regulations[.]

*See Exhibit G at ¶ 1(a) and 1(d).*

32. These findings were directly contrary to the representations made by Ellis and Brown to and relied upon by Mr. Hooper and BVS in connection with their purchase of Lydian Bank Preferred Stock.

33. On or about August 19, 2011, Lydian Bank was seized by federal regulators. As a result, Mr. Hooper and BVS did not realize the investment gains assured them by Brown and Ellis and lost the principal amount of their investments.

34. The misstatements and omissions made by Brown and Ellis in order to induce Mr. Hooper and BVS to invest in the Preferred Stock were material and Mr. Hooper and BVS relied upon the material misstatements and material omissions made by Brown and Ellis to their detriment.

35. As a result, Mr. Hooper and BVS suffered what amounts to a total loss on their investments.

36. All conditions precedent to bringing this action have occurred, are excused or have been waived.

37. Due to Defendants' actions, Plaintiffs have been required to hire undersigned counsel and have agreed to pay them a reasonable fee for their services.

## COUNT I – NEGLIGENT MISREPRESENTATION

38. Plaintiffs reallege all of the allegations set forth above in Paragraphs 8 through 37, as though fully set forth herein.

39. Brown was President and CEO of Lydian Bank.

40. Ellis was Executive Vice President of Lydian Bank.

41. In their capacities as officers of Lydian Bank, and on behalf of Lydian Bank and/or LHC, Brown and Ellis made material misrepresentations of material fact to Mr. Hooper and BVS in connection with their 2009 purchase of Lydian Bank Preferred Stock.

42. Specifically, Brown and Ellis represented, among other things, that:

   a) that Lydian Bank was adequately capitalized in ratio to its assets and, in fact, had a better capital ratio than other banks in its peer group;

   b) that Lydian Bank had adequate loan loss reserves;

   c) that Lydian Bank ranked in the top three banks in its peer group for performance;

9

    d) that the book value of the Lydian Bank stock was in excess of $20.00;

    e) that Lydian Bank was "going public in 24 months" and that the offering price of the public execution would be at least two times book value; and

    f) that the conversion price for the preferred stock being offered would be approximately $20.00 per share.

43. At the time Brown and Ellis made these material misrepresentations to Mr. Hooper and BVS, they should have known that these material misrepresentations were false based on their positions as officers of Lydian Bank, their ability to conduct due diligence based upon their positions as officers, and the scope of information available to them in their capacity as officers of Lydian Bank.

44. Brown and Ellis made these material misrepresentations concerning Lydian Bank in order to induce Mr. Hooper and BVS to move assets from their individual investment accounts with or through Lydian Bank to purchase the Preferred Stock.

45. Mr. Hooper and BVS relied upon the material misrepresentations of Brown and Ellis to their detriment.

46. Mr. Hooper and BVS were justified in their reliance on the material misrepresentations made to them by Brown and Ellis because Brown and Ellis were high level officers of Lydian Bank and persons expressly authorized by Lydian to make statements in connection with its private placements.

47. Mr. Hooper and BVS have suffered damages as the result of Brown and Ellis' material misrepresentations.

WHEREFORE, Plaintiffs demands entry of a judgment against Defendant RORY A. BROWN and Defendant JEROME M. ELLIS for damages, prejudgment interest thereon, interest, costs, and such other and further relief as this Court deems just and proper.

10

**BROAD and CASSEL**

One Biscayne Tower 2 South Biscayne Boulevard Suite 2100 Miami, Florida 33131 305.373.9400
One Biscayne Tower 2 South Biscayne Boulevard Suite 2100 Miami, Florida 33131 305.373.9400

4827-0333-4926.6
46246/0001

## COUNT II – BREACH OF FIDUCIARY DUTY

48. Plaintiffs reallege all of the allegations set forth above in Paragraphs 8 through 37, as though fully set forth herein.

49. Brown was President and CEO of Lydian Bank.

50. Ellis was Executive Vice President of Lydian Bank.

51. Mr. Hooper and BVS were clients of the wealth management services offered by Lydian Bank and who had deposited significant funds with the bank.

52. Plaintiffs reposed their trust and confidence in Defendants and Defendants were aware of and accepted Plaintiffs' trust and confidence.

53. Brown and Ellis solicited Mr. Hooper and BVS' investment in Lydian Bank Preferred Stock on behalf of Lydian Bank and/or LHC.

54. In connection with this transaction, Brown and Ellis, on behalf of Lydian Bank and/or LHC. assumed a fiduciary duty to disclose facts material to the transaction that were within their knowledge as officers of Lydian Bank and that were not readily available to Mr. Hooper and BVS.

55. Brown and Ellis breached this fiduciary duty by failing to advise Mr. Hooper and BVS of material facts concerning Lydian Bank's financial condition in connection with their 2009 Lydian Bank Preferred Stock transactions. Brown and Ellis also breached this fiduciary duty by making misrepresentations of material fact to Mr. Hooper and BVS in connection with their 2009 purchase of Lydian Bank Preferred Stock. Additionally, upon information and belief, Defendants breached their fiduciary duties by failing to act in the best interests of those to whom they owed fiduciary duties.

56. Specifically, Brown and Ellis represented, among other things, that:

    a) that Lydian Bank was adequately capitalized in ratio to its assets and, in fact, had a better capital ratio than other banks in its peer group;

    b) that Lydian Bank had adequate loan loss reserves;

    c) that Lydian Bank ranked in the top three banks in its peer group for performance;

    d) that the book value of the Lydian Bank stock was in excess of $20.00;

    e) that Lydian Bank was "going public in 24 months" and that the offering price of the public execution would be at least two times book value; and

    f) that the conversion price for the preferred stock being offered would be approximately $20.00 per share.

57. Brown and Ellis' breach of fiduciary duty is the proximate cause of the damages suffered by Mr. Hooper and BVS in connection with their investment in Lydian Bank Preferred Stock.

WHEREFORE, Plaintiffs demands entry of a judgment against Defendant RORY A. BROWN and Defendant JEROME M. ELLIS for damages, prejudgment interest thereon, interest, costs, and such other and further relief as this Court deems just and proper.

Dated this 5 day of February, 2012.

Respectfully submitted,

Mark F. Raymond, P.A.
Florida Bar No. 373397
mraymond@broadandcassel.com
Rhett Traband, P.A.
Florida Bar No. 0028894
rtraband@broadandcassel.com
Chalon T. Allen
Florida Bar No. 0573507
callen@broadandcassel.com
Broad and Cassel
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.373.9425
Facsimile: 305.995.6385

By: _____
Counsel for Plaintiff