UNITED STATES OF AMERICA
Before the
OFFICE OF THRIFT SUPERVISION

|  |  |
|---|---|
| In the Matter of | Order No.: SE-10-043 |
| **LYDIAN PRIVATE BANK** | Effective Date:  September 16, 2010 |
| Palm Beach, Florida | |
| OTS Docket No. 16406 | |

## ORDER TO CEASE AND DESIST

**WHEREAS,** Lydian Private Bank, Palm Beach, Florida, OTS Docket No. 16406

(Association), by and through its Board of Directors (Board), has executed a Stipulation and

Consent to Issuance of an Order to Cease and Desist (Stipulation); and

**WHEREAS,** the Association, by executing the Stipulation, has consented and agreed to

the issuance of this Order to Cease and Desist (Order) by the Office of Thrift Supervision (OTS)

pursuant to 12 U.S.C. § 1818(b); and

**WHEREAS,** pursuant to delegated authority, the OTS Regional Director for the

Southeast Region (Regional Director) is authorized to issue Orders to Cease and Desist where a

savings association has consented to the issuance of an order.

**NOW, THEREFORE, IT IS ORDERED that:**

Lydian Private Bank
Order to Cease and Desist
Page 1 of 14



**Cease and Desist.**

1.      The Association, its institution-affiliated parties,[1] and its successors and assigns, shall cease and desist from any action (alone or with others) for or toward causing, bringing about, participating in, counseling, or the aiding and abetting the unsafe or unsound banking practices that resulted in:

(a)      operating the Association with an inadequate level of capital protection for the volume, type, and quality of assets held by the Association;

(b)      operating the Association without an adequate  number of experienced and qualified managers and lending staff and failing to establish and implement an appropriate management succession plan;

(c)      operating the Association with a board of directors that has failed to exercise adequate supervision over, and provide adequate direction to, management of the Association to prevent unsafe and unsound banking practices and violations of laws or regulations;

(d)      failing to accurately reflect the condition of the Association in Thrift Financial Reports;

(e)      operating the Association without adequate and effective credit risk management policies, procedures, systems and staff;

(f)      operating the Association without an adequate and effective compliance program;

(g)      failing to ensure that all transactions with affiliates comply with applicable laws and regulations; and

(h)      operating in contravention of supervisory policy statements and other guidance,

---

[1] The term "institution-affiliated party" is defined at 12 C.F.R. § 1813(u).

Lydian Private Bank
Order to Cease and Desist
Page 2 of 14

including:

(i)    Interagency Guidelines Establishing Standards for Safety and Soundness; and

(ii)    Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure contained in OTS Chief Executive Officer Memorandum No. 98.

2.     The Association, its institution-affiliated parties, and its successors and assigns, shall also cease and desist from any action (alone or with others) for or toward causing, bringing about, participating in, counseling, or the aiding and abetting of any violations of the following regulations:

(a)    12 C.F.R. § 563.41 and 12 C.F.R. Part 223 (regarding transactions with affiliates);

(b)    12 C.F.R. § 203.4 (requiring the compilation of loan data);

(c)    24 C.F.R. §§ 3500.7(c)(1) and 3500.8(b) (regarding good faith estimates and HUD-1 statements);

(d)    12 C.F.R. § 563e.42 (regarding the Community Reinvestment Act); and

(e)    12 C.F.R. Part 562 (regarding regulatory reporting standards).

**Capital.**

3.     By December 31, 2010, the Association shall have and maintain a Tier 1 (Core) Capital Ratio equal to or greater than eight percent (8%) and a Total Risk-Based Capital Ratio equal to or greater than twelve percent (12%).[2]

---

[2] The requirement in Paragraph 3 to have and maintain a specific capital level means that the Association may not be deemed to be "well-capitalized" for purposes of 12 U.S.C. §1831o and 12 C.F.R. Part 565, pursuant to 12 C.F.R. §565.4(b)(1)(iv).

Lydian Private Bank
Order to Cease and Desist
Page 3 of 14

4.     By October 29, 2010, the Association shall submit to the Regional Director for review and nonobjection a written plan to achieve and maintain the Association's capital at the levels prescribed in Paragraph 3 (Capital Plan). At a minimum, the Capital Plan shall:

   (a)     identify the specific sources of additional capital and the timeframes and methods by which additional capital will be raised, including specific target dates and corresponding capital levels;

   (b)     detail the Association's capital preservation and enhancement strategies with specific narrative goals;

   (c)     address the requirements and restrictions imposed by this Order relating to capital under at least three (3) different forward-looking scenarios involving progressively stressed economic environments;

   (d)     include detailed quarterly financial projections, including Tier 1 (Core) and Total Risk-Based Capital Ratios;

   (e)     address the Association's level of classified assets, ALLL, earnings, asset concentrations, liquidity needs, and trends in the foregoing areas; and

   (f)     address current and projected trends in real estate market conditions.

5.     Upon receipt of written nonobjection from the Regional Director, the Association shall implement and adhere to the Capital Plan. A copy of the Capital Plan and the Board meeting minutes reflecting the Board's adoption thereof shall be provided to the Regional Director within ten (10) days after the Board meeting.

6.     On a monthly basis, beginning with the first month following receipt of nonobjection from the Regional Director, the Board shall review the Association's compliance with the Capital Plan. At a minimum, the Board's review shall include:

(a)     a comparison of actual operating results to projected results;

(b)     detailed explanations of any material deviations;[3] and

(c)     a discussion of specific corrective actions or measures that have been or will be implemented to address each material deviation.

7.     Within fifteen (15) days after: (a) the Association fails to meet the capital requirements prescribed in Paragraph 3; (b) the Association fails to comply with the Capital Plan prescribed in Paragraph 4; or (c) any written request from the Regional Director, the Association shall submit a written Contingency Plan that is acceptable to the Regional Director.

8.     The Contingency Plan shall detail the actions to be taken, with specific time frames, to achieve one of the following results by the later of the date of receipt of all required regulatory approvals or sixty (60) days after the implementation of the Contingency Plan: (a) merger with, or acquisition by, another federally insured depository institution or holding company thereof; or (b) voluntary dissolution by filing an appropriate application with the OTS in conformity with applicable laws, regulations and regulatory guidance.

9.     Upon receipt of written notification from the Regional Director, the Association shall implement and adhere to the Contingency Plan immediately.  The Association shall provide the Regional Director with written status reports detailing the Association's progress in implementing the Contingency Plan by no later than the first (1st) and fifteenth (15th) of each month following implementation of the Contingency Plan.

---

[3] A deviation shall be considered material under this Paragraph of the Order when the Association determines that it needs to adjust its identified sources of additional capital, timeframes, methods, or target dates by which it will raise capital.

Lydian Private Bank
Order to Cease and Desist
Page 5 of 14

**Financial Reporting.**

10.     Effective immediately, the Association shall ensure that its books and records, financial reports and statements are timely and accurately prepared and filed in compliance with generally accepted accounting principles and applicable laws, regulations, and regulatory guidance including, but not limited to, 12 C.F.R. Part 562 and the Thrift Financial Report (TFR) instructions.

11.     Effective immediately, the Association shall continue risk-weighting all payment option adjustable rate mortgage loans at 100 percent for risk-based capital purposes on the Association's Thrift Financial Report.

12.     Effective immediately, the Association shall ensure that its allowance for loan and lease loss (ALLL) on troubled debt restructurings (TDRs) is calculated in accordance with ASC 310-10, *Accounting by Creditors for Impairment of a Loan*, and OTS Thrift Bulletin 85, *Regulatory and Accounting Issues Related to Modifications and TDRs of 1-4 Residential Mortgage Loans*.

**Credit Risk Management.**

13.     Within sixty (60) days, the Association shall employ an experienced and qualified credit risk manager who will work independently of the loan origination and approval process and has not previously been part of the loan origination or approval process.

14.     Within sixty (60) days, the Association shall amend its loan approval authorities to incorporate guidelines requiring the prior approval by a majority of the loan committee and Board for loans and modifications that have balances of One Million Dollars $1,000,000 or greater.

**Board Oversight.**

15.     Effective immediately, the Board shall conduct regular monthly board meetings to discuss the Association's business operations, financial results, significant transactions, and performance. The Board's discussions and decisions shall be detailed in the board meeting minutes.

16.     Within sixty (60) days, the Board shall submit a written plan to strengthen and improve the Association's corporate governance structure (Governance Plan) that is acceptable to the Regional Director. At a minimum, the Governance Plan shall:

>   (a)     list and describe the reports that will be submitted to the Board for review, including the frequency of such reports (e.g., monthly, quarterly);

>   (b)     establish criteria identifying transactions that must be submitted to the Board for review;

>   (c)     specify the supporting documents or other information that must be included with reports and transactions submitted to the Board for review under subparagraph (a); and

>   (d)     establish monitoring processes and systems to track and ensure completion of Board adopted actions and decisions within established timeframes.

17.     Upon receipt of written notification from the Regional Director that the Governance Plan is acceptable, the Association shall implement and adhere to the Governance Plan.

**Compliance Program.**

18.     Within sixty (60) days, the Association shall retain a qualified and experienced full-time compliance officer. The Association shall comply with the requirements Paragraph xx of this Order.

19.     Within sixty (60) days, the Association shall revise its written consumer compliance program (Compliance Program) to address all corrective actions set forth in the 2009 ROE relating to consumer compliance.  The Association's Compliance Program shall:

  (a)     be supported by adequate staffing and resources;

  (b)     ensure compliance with all applicable consumer and other compliance laws, regulations and regulatory guidance (Compliance Laws and Regulations);[4] and

  (c)     be appropriate for the Association's size, complexity, product lines and business operations.

**Tax Sharing Agreement.**

20.     Effective immediately, the Association shall comply with the Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure contained in OTS Chief Executive Officer Memorandum No. 98.

**Transactions with Affiliates.**

21.     Effective immediately, the Association shall not engage in any new transaction with an affiliate unless, with respect to each such transaction, the transaction has been reviewed and approved by the Board and the Association has complied with the notice requirements set forth in 12 C.F.R. § 563.41(c)(4), which notice shall include the information set forth in 12 C.F.R. § 563.41(c)(3).  The Board shall ensure that any transaction with an affiliate for which notice is submitted pursuant to this Paragraph, complies with the requirements of 12 C.F.R. § 563.41 and Regulation W, 12 C.F.R. Part 223.

---

[4] The term "consumer and other compliance laws, regulations and regulatory guidance" includes all laws and regulations referenced in Section 1100 (Compliance Oversight Examination Program) of the OTS Examination Handbook.

22.     Within thirty (30) days, the Association shall conduct a review of all outstanding

arrangements or contracts with affiliates regarding the provision of services or products,

including all transactions discussed in the 2009 ROE, and ensure that such transactions comply

with the requirements of 12 C.F.R. § 563.41 and Regulation W, 12 C.F.R. Part 223 (TWA

Review).  The TWA Review shall identify all transactions reviewed and any required corrective

actions. .  Within forty-five (45) days, the Association shall submit a copy of the TWA Review

to the Regional Director.

**Brokered Deposits.**

23.     Effective immediately, the Association shall comply with the requirements of 12 C.F.R. §

337.6(b).

**Directorate and Management Changes.**

24.     Effective immediately, the Association shall comply with the prior notification

requirements for Changes in Directors and Senior Executive Officers[5] set forth in 12 C.F.R. Part

563, Subpart H.

**Dividends and Other Capital Distributions.**

25.     Effective immediately, the Association shall not declare or pay dividends or make any

other capital distributions, as that term is defined in 12 C.F.R. § 563.141, without receiving the

prior written approval of the Regional Director in accordance with applicable regulations and

regulatory guidance.  The Association's written request for approval shall be submitted to the

Regional Director at least forty-five (45) days prior to the anticipated date of the proposed

declaration, dividend payment or distribution of capital.

---

[5] The term "Senior Executive Officer" is defined at 12 C.F.R. § 563.555.

**Employment Contracts and Compensation Arrangements.**

26.     Effective immediately, the Association shall not enter into, renew, extend or revise any contractual arrangement relating to compensation or benefits for any Senior Executive Officer or director of the Association, unless it first provides the Regional Director with not less than thirty (30) days prior written notice of the proposed transaction. The notice to the Regional Director shall include a copy of the proposed employment contract or compensation arrangement or a detailed, written description of the compensation arrangement to be offered to such officer or director, including all benefits and perquisites. The Board shall ensure that any contract, agreement or arrangement submitted to the Regional Director fully complies with the requirements of 12 C.F.R. Part 359, 12 C.F.R. §§ 563.39 and 563.161(b), and 12 C.F.R. Part 570 – Appendix A, and the Interagency Guidance on Sound Incentive Compensation Policies contained in OTS Chief Executive Officer Memorandum No. 354.

**Golden Parachute and Indemnification Payments.**

27.     Effective immediately, the Association shall not make any golden parachute payment[6] or prohibited indemnification payment[7] unless, with respect to each such payment, the Association has complied with the requirements of 12 C.F.R. Part 359 and, as to indemnification payments, 12 C.F.R. § 545.121.

**Third Party Contracts.**

28.     Effective immediately, the Association shall not enter into any arrangement or contract with a third party service provider that is significant to the overall operation or financial

---

[6] The term "golden parachute payment" is defined at 12 C.F.R. § 359.1(f).
[7] The term "prohibited indemnification payment" is defined at 12 C.F.R. § 359.1(l).

condition of the Association[8] or outside the Association's normal course of business unless, with respect to each such contract, the Association has: (a) provided the Regional Director with a minimum of thirty (30) days prior written notice of such arrangement or contract and a written determination that the arrangement or contract complies with the standards and guidelines set forth in Thrift Bulletin 82a (TB 82a); and (b) received written notice of non-objection from the Regional Director.

**Violations of Law and/or Regulation.**

29.     Within thirty (30) days, the Association shall ensure that all violations of law and/or regulation discussed in the 2009 ROE are corrected and that adequate policies, procedures and systems are implemented to prevent future violations.

**Board Oversight of Compliance with Order.**

30.     Within thirty (30) days, the Board shall designate a committee to monitor and coordinate the Association's compliance with the provisions of this Order and the completion of all corrective actions required in the 2009 ROE (Oversight Committee).  The Oversight Committee shall be comprised of four (4) or more directors, the majority of whom shall be independent[9] directors.

---

[8] A contract will be considered significant to the overall operation or financial condition of the Association where the annual contract amount equals or exceeds two percent (2%) of the Association's total capital, where there is a foreign service provider, or where it involves information technology that is critical to the Association's daily operations without regard to the contract amount.

[9] For purposes of this Order, an individual who is "independent" with respect to the Association shall be any individual who:

    (a)    is not employed in any capacity by the Association or Holding Company, its subsidiaries, or its affiliates, other than as a director;

    (b)    does not own or control more than ten percent (10%) of the outstanding shares of the Association, Holding Company or any of its affiliates;

    (c)    is not related by blood or marriage to any officer or director of the Association, Holding Company or any of its affiliates, or to any shareholder owning more than ten percent (10%) of the outstanding shares of the Association, Holding Company or any of its affiliates, and who does not otherwise share a common financial interest with any such officer, director or shareholder;

31.     Within sixty (60) days after the end of each quarter, beginning with the quarter ending September 30, 2010, the Oversight Committee shall submit a written compliance progress report to the Board (Compliance Tracking Report).  The Compliance Tracking Report shall, at a minimum:

      (a)     separately list each corrective action required by this Order and the 2009 ROE;

      (b)     identify the required or anticipated completion date for each corrective action; and

      (c)     discuss the current status of each corrective action, including the action(s) taken or to be taken to comply with each corrective action.

32.     Within sixty (60) days after the end of each quarter, beginning with the quarter ending September 30, 2010, the Board shall review the Compliance Tracking Report and all reports required to be prepared by this Order.  Following its review, the Board shall adopt a resolution: (a) certifying that each director has reviewed the Compliance Tracking Report and all required reports; and (b) documenting any corrective actions adopted by the Board.  A copy of the Compliance Tracking Report and the Board resolution shall be provided to the Regional Director within ten (10) days after the Board's review of the Compliance Tracking Report.

33.     Nothing contained herein shall diminish the responsibility of the entire Board to ensure the Association's compliance with the provisions of this Order.  The Board shall review and adopt all policies and procedures required by this Order prior to submission to the OTS.

---

(d)     is not indebted, directly or indirectly, to the Association, Holding Company or any of its affiliates, including the indebtedness of any entity in which the individual has a substantial financial interest, in an amount exceeding ten percent (10%) of the Association's total Tier 1 (Core) capital; and
(e)     has not served as a consultant, advisor, underwriter, or legal counsel to the Association, Holding Company or any of its affiliates.

**Effective Date, Incorporation of Stipulation.**

34.    This Order is effective on the Effective Date as shown on the first page.  The Stipulation is made a part hereof and is incorporated herein by this reference.

**Duration.**

35.    This Order shall remain in effect until terminated, modified, or suspended by written notice of such action by the OTS, acting by and through its authorized representatives.

**Time Calculations.**

36.    Calculation of time limitations for compliance with the terms of this Order run from the Effective Date and shall be based on calendar days, unless otherwise noted.

37.    The Regional Director, or an OTS authorized representative, may extend any of the deadlines set forth in the provisions of this Order upon written request by the Association that includes reasons in support for any such extension.  Any OTS extension shall be made in writing.

**Submissions and Notices.**

38.    All submissions, including any reports, to the OTS that are required by or contemplated by this Order shall be submitted within the specified timeframes.

39.    Except as otherwise provided herein, all submissions, requests, communications, consents or other documents relating to this Order shall be in writing and sent by first class U.S. mail (or by reputable overnight carrier, electronic facsimile transmission or hand delivery by messenger) addressed as follows:

      (a)     To the OTS:
                Regional Director
                Office of Thrift Supervision
                1475 Peachtree St., N.E.
                Atlanta, Georgia 30309
                404.897.1861 (Fax)

    (b)     To the Association:
                Lydian Private Bank
                c/o Rory Brown, Chairman
                180 Royal Palm Way
                Palm Beach, FL 33480

**No Violations Authorized.**

40.     Nothing in this Order or the Stipulation shall be construed as allowing the Association, its

Board, officers, or employees to violate any law, rule, or regulation.

**IT IS SO ORDERED.**

                                   **OFFICE OF THRIFT SUPERVISION**

                                   /s/

By: _____
           James G. Price
           Regional Director, Southeast Region

Date: See Effective Date on page 1

UNITED STATES OF AMERICA
Before the
OFFICE OF THRIFT SUPERVISION

| | |
|---|---|
| In the Matter of ) | Order No.: SE-10-043 |
| ) | |
| ) | |
| **LYDIAN PRIVATE BANK** ) | Effective Date: September 16, 2010 |
| ) | |
| Palm Beach, Florida ) | |
| OTS Docket No. 16406 ) | |

## STIPULATION AND CONSENT TO ISSUANCE OF ORDER TO CEASE AND DESIST

**WHEREAS,** the Office of Thrift Supervision (OTS), acting by and through its Regional

Director for the Southeast Region (Regional Director), and based upon information derived from

the exercise of its regulatory and supervisory responsibilities, has informed Lydian Private Bank,

Palm Beach, Florida, OTS Docket No. 16406 (Association), that the OTS is of the opinion that

grounds exist to initiate an administrative proceeding against the Association pursuant to 12

U.S.C. § 1818(b);

**WHEREAS,** the Regional Director, pursuant to delegated authority, is authorized to

issue Orders to Cease and Desist where a savings association has consented to the issuance of an

order; and

**WHEREAS,** the Association desires to cooperate with the OTS to avoid the time and

expense of such administrative cease and desist proceeding by entering into this Stipulation and

Consent to Issuance of Order to Cease and Desist (Stipulation) and, without admitting or denying

that such grounds exist, but only admitting the statements and conclusions in Paragraphs 1 and 2

below concerning Jurisdiction, hereby stipulates and agrees to the following terms:

**Jurisdiction.**

1.      The Association is a "savings association" within the meaning of 12 U.S.C. § 1813(b)

and 12 U.S.C. § 1462(4).  Accordingly, the Association is "an insured depository institution" as

that term is defined in 12 U.S.C. § 1813(c).

2.      Pursuant to 12 U.S.C. § 1813(q), the Director of the OTS is the "appropriate Federal

banking agency" with jurisdiction to maintain an administrative enforcement proceeding against

a savings association.  Therefore, the Association is subject to the authority of the OTS to initiate

and maintain an administrative cease and desist proceeding against it pursuant to 12 U.S.C. §

1818(b).

**OTS Findings of Fact.**

3.      Based on its December 14, 2009 examination of the Association (2009 ROE), the OTS

finds that the Association has engaged in unsafe or unsound banking practices including, but not

limited to:

>      (a)      operating the Association with an inadequate level of capital protection for the
>
>      volume, type and quality of assets held by the Association;
>
>      (b)      operating the Association without an adequate level of experienced and qualified
>
>      managers and lending staff and failing to establish and implement an appropriate
>
>      management succession plan;
>
>      (c)      operating the Association with a board of directors that has failed to exercise
>
>      adequate supervision over and provide adequate direction to management of the
>
>      Association to prevent unsafe and unsound banking practices and violations of laws or
>
>      regulations;

(d)     failing to accurately reflect the condition of the Association in Thrift Financial Reports;

(e)     operating the Association without adequate and effective credit risk management policies, procedures, systems and staff;

(f)     operating the Association without an adequate and effective compliance program;

(g)     failing to ensure that all transactions with affiliates comply with applicable laws and regulations;

(h)     operating in contravention of supervisory policy statements and other guidance, including:

      (i)     Interagency Guidelines Establishing Standards for Safety and Soundness; and

      (ii)     Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure contained in OTS Chief Executive Officer Memorandum No. 98;

4.     Based on its 2009 ROE of the Association, the OTS finds that the Association has engaged in violations of law and regulation including, but not limited to:

(a)     12 C.F.R. § 563.41 and 12 C.F.R. Part 223 (regarding transactions with affiliates);

(b)     12 C.F.R. § 203.4 (requiring the compilation of loan data);

(c)     24 C.F.R. §§ 3500.7(c)(1)and 3500.8(b) (regarding good faith estimates and HUD-1 statements);

(d)     12 C.F.R. § 563e.42 (regarding the Community Reinvestment Act); and

(e)     12 C.F.R. Part 562 (regarding regulatory reporting standards).

**Consent.**

5.     The Association consents to the issuance by the OTS of the accompanying Order to Cease and Desist (Order). The Association further agrees to comply with the terms of the Order upon the Effective Date of the Order and stipulates that the Order complies with all requirements of law.

**Finality.**

6.     The Order is issued by the OTS under 12 U.S.C. § 1818(b). Upon the Effective Date, the Order shall be a final order, effective, and fully enforceable by the OTS under the provisions of 12 U.S.C. § 1818(i).

**Waivers.**

7.     The Association waives the following:

(a)     the right to be served with a written notice of the OTS's charges against it as provided by 12 U.S.C. § 1818(b) and 12 C.F.R. Part 509;

(b)     the right to an administrative hearing of the OTS's charges as provided by 12 U.S.C. § 1818(b) and 12 C.F.R. Part 509;

(c)     the right to seek judicial review of the Order, including, without limitation, any such right provided by 12 U.S.C. § 1818(h), or otherwise to challenge the validity of the Order; and

(d)     any and all claims against the OTS, including its employees and agents, and any other governmental entity for the award of fees, costs, or expenses related to this OTS enforcement matter and/or the Order, whether arising under common law, federal statutes, or otherwise.

**OTS Authority Not Affected.**

8.     Nothing in this Stipulation or accompanying Order shall inhibit, estop, bar, or otherwise prevent the OTS from taking any other action affecting the Association if at any time the OTS deems it appropriate to do so to fulfill the responsibilities placed upon the OTS by law.

**Other Governmental Actions Not Affected.**

9.     The Association acknowledges and agrees that its consent to the issuance of the Order is solely for the purpose of resolving the matters addressed herein, consistent with Paragraph 8 above, and does not otherwise release, discharge, compromise, settle, dismiss, resolve, or in any way affect any actions, charges against, or liability of the Association that arise pursuant to this action or otherwise, and that may be or have been brought by any governmental entity other than the OTS.

**Miscellaneous.**

10.     The laws of the United States of America shall govern the construction and validity of this Stipulation and of the Order.

11.     If any provision of this Stipulation and/or the Order is ruled to be invalid, illegal, or unenforceable by the decision of any Court of competent jurisdiction, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby, unless the Regional Director in his or her sole discretion determines otherwise.

12.     All references to the OTS in this Stipulation and the Order shall also mean any of the OTS's predecessors, successors, and assigns.

13.     The section and paragraph headings in this Stipulation and the Order are for convenience only and shall not affect the interpretation of this Stipulation or the Order.

14.     The terms of this Stipulation and of the Order represent the final agreement of the parties

with respect to the subject matters thereof, and constitute the sole agreement of the parties with respect to such subject matters.

15.     The Stipulation and Order shall remain in effect until terminated, modified, or suspended in writing by the OTS, acting through its Regional Director or other authorized representative.

**Signature of Directors/Board Resolution.**

16.     Each Director signing this Stipulation attests that he or she voted in favor of a Board Resolution authorizing the consent of the Association to the issuance of the Order and the execution of the Stipulation. This Stipulation may be executed in counterparts by the directors after approval of execution of the Stipulation at a duly called board meeting.

**[Remainder of Page Intentionally Left Blank]**

**WHEREFORE,** the Association, by its directors, executes this Stipulation.

Accepted by:

**LYDIAN PRIVATE BANK**
**Palm Beach, Florida**

**OFFICE OF THRIFT SUPERVISION**

/s/

By:_____
    Rory A. Brown
    Chairman

/s/

By:_____
    James G. Price
    Regional Director, Southeast Region

Date: See Effective Date on page 1

/s/

_____
Paul L. Maddock, Jr., Director

/s/

_____
James B. Meany, Director

/s/

_____
Dominick A. Telesco, Director

/s/

_____
William R. Tiefel, Director