UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

BVS ACQUISITION CO., LLC,
a Delaware Limited Liability Company, AND
ARTHUR W. HOOPER, JR., an
individual,

        CASE NO.: 9:12-cv-80247-DMM

    Plaintiffs,

v.

RORY A. BROWN,

    Defendant.

_____/

# EXHIBIT G

2699 s. bayshore drive
miami, florida 3 3 1 3 3

305 858 5600
305 856 3284 fax

www.kaufmanrossin.com

**KAUFMAN ROSSIN & CO.**
PROFESSIONAL ASSOCIATION
CERTIFIED PUBLIC ACCOUNTANTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO.: 09-cv-80247-DMM

BVS ACQUISITION CO., LLC,
a Delaware Limited Liability Company, and
ARTHUR W. HOOPER, JR., an individual,

    Plaintiffs,

v.

RORY A. BROWN, an individual,

    Defendant.
_____/

# Preliminary Expert Witness Report

*Prepared by Patrick F. Gannon,*
CPA, ABV, CFF, CVA
July 16, 2012

MIAMI ■ FT. LAUDERDALE ■ BOCA RATON


Praxity MEMBER
GLOBAL ALLIANCE OF INDEPENDENT FIRMS

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN
Report of Patrick F. Gannon, July 16, 2012

I.  **BACKGROUND**

The Amended Complaint alleges that in 2008 BVS Acquisition Co., LLC and Arthur W. Hooper Jr. (Plaintiffs) became customers of Lydian Private Bank (Lydian) with the intention of making investments through Lydian, and in connection with that intention Plaintiffs deposited approximately $10 million with Lydian. It is alleged that thereafter Rory A. Brown (Brown) recommended *"rather than invest pursuant to the individual investment programs that had been prepared for [Plaintiffs], [they] should instead invest in Lydian Bank Preferred Stock"*[1] (Preferred Stock).

It is further alleged that Brown (Defendant) represented to Plaintiffs, among other things that Lydian i) was financially stable, ii) was adequately capitalized, iii) had adequate loan loss reserves, iv) was ranked in the top three banks in its peer group for performance, v) had a book value in excess of $20 [per share], vi) would go public in 24 months at at-least two times book value and vii) the Preferred Stock would have a conversion price of approximately $20 per share. I have been advised that, based upon these representations, a May 15, 2009 Private Placement Memorandum, a June 2, 2009 Private Placement Memorandum and certain other Lydian documents hereafter referred to as Offering Presentations,[2] Plaintiffs invested $10 million in the Preferred Stock. Thereafter, Lydian failed and the Plaintiffs suffered a complete loss of their investments in the Preferred Stock.

On, or about May 21, 2012, Plaintiffs filed an Amended Complaint (Complaint) alleging, among other things, claims for negligent misrepresentation and breach of fiduciary duty seeking damages,

---

[1] BVS Acquisition Co., LLC, a Delaware Limited Liability Company, and Arthur W. Hooper, Jr., v. Rory A. Brown, dated May 21, 2012.
[2] These are documents appearing to be PowerPoint style presentations prepared by Lydian at differing dates. They typically include Preferred Stock offering terms, limited historical financial information and limited financial projections for Lydian.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

prejudgment interest thereon, interest, costs, and such other and further relief as the Court deems just and proper.

## II. ASSIGNMENT

Kaufman Rossin & Co. ("I") was retained Plaintiffs in June 2012. Under that engagement, I was asked to analyze information provided to Plaintiffs in connection with their decision to invest in and hold the Preferred Stock and to consider the internal controls of Lydian Bank at or around the time the Plaintiffs invested into the Preferred Stock, and thereafter. In addition, I was asked to calculate potential statutory interest on Plaintiffs' losses and to be available i) to consider any analyses that may be put forth by the Defendant and/or his expert, ii) to read or analyze and consider any additional relevant information such as auditor working papers, reports, documents, deposition testimony, etc. that may become available and iii) to consult on technical or otherwise specialized evidence related to the engagement. Finally, I was asked to be available to provide expert testimony regarding my opinions.

## III. OPINION

Based upon my analyses to date[3], relevant Lydian financial information provided by Defendant to Plaintiffs and Lydian financial information otherwise available to Plaintiffs prior to their investments in the Preferred Stock was materially incorrect and the financial projections made available to Plaintiffs were faulty and, appear to disregard and in some cases contradict economic conditions critical to such projections. Therefore, in my opinion the information available to Plaintiffs was materially misleading.

---

[3] Significant relevant financial discovery has not yet become available and it may impact my opinions.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

Additionally, assuming Plaintiffs prevail on their legal claims and the court finds they are entitled to statutory interest, I have calculated statutory interest on their losses to be approximately $446,000 through the date of the report and ad additional $1,300 per day thereafter as summarized below:

| | | | Plaintiffs | | | |
|---|---|---|---|---|---|---|
| a<br>Damages<br>Outstanding | Statutory<br>Rate | b<br>Daily Rate | Period | | c<br># Days<br>O/S | =a x b x c<br>Statutory<br>Interest |
| | | | From | To | | |
| $ 10,000,000 | 6.00% | 0.01643% | 08/19/11 | 09/30/11 | 42 | $ 69,006 |
| $ 10,000,000 | 4.75% | 0.01300% | 09/30/11 | 12/31/11 | 92 | 119,600 |
| $ 10,000,000 | 4.75% | 0.01300% | 12/31/11 | 07/16/12 | 198 | 257,400 |
| | | | | Total thru 7/16/12 | | $ 446,006 |
| | | | | Daily interest | | $ 1,300 |

## IV.  BASIS FOR OPINION

**Historical Financial Information**

In formulating my opinions, I considered the information set forth in section V to this report or otherwise referenced within this report and I (or colleagues at my direction) met with, and had various conversations with Counsel and others. At the date of this report significant discovery is pending and I am therefore presently unable to perform certain comprehensive analyses of Lydian's financial accounts sufficient to identify each and every material error present in the information provided to, or otherwise available to Plaintiffs in advance of their investments in the Preferred Stock. However, sufficient information is available to support my opinions set forth above. Among other procedures and consideration of additional documents, my analyses included a review of the Lydian's Thrift Financial Reports (TFRs)[4] for each quarter ended March 31, 2007 through June 30, 2011. I then compared relevant balances and results of operations from the TFRs to those within the Offering Presentations prepared at

---

[4] Comprehensive financial statements submitted quarterly and available on the web site of the Federal Financial Institution Examination Council (FFIEC) at https://cdr.ffiec.gov/public/ManageFacsimiles.aspx.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

various dates and provided to Plaintiffs. Thereafter, when considering comments within the Office of Inspector General (OIG) Audit Report dated March 21, 2012 (OIG Report)[5] and the results of the comparison discussed above it became apparent that the Offering Presentations and TFR reports available to the Plaintiffs were materially misleading.

This conclusion is further evidenced by the following facts:

- The OIG found errors in TFRs and the 2008 and 2009 audited financial statements and ordered correction[6]

- The Offering Presentations reflecting historical results of operations and equity prepared shortly after December 31, 2008 were prepared prior to the correction of errors to historical financial statements that were either subsequently completed, or ordered by the OTS but not completed.[7]

Also relevant is that although Lydian was ordered[8] to restate TFRs, it seems clear that in at least some cases they did not.[9] For example, a Lydian Offering Presentation titled *2010 Financial Overview* includes an apparent corrected version of Lydian's 2009 Net Loss (shown to be $15.9 Million) while another Lydian Offering Presentation titled *Corporate Overview January 22, 2010* erroneously shows the 2009 Net Loss was forecasted to be only $9.5 million. The latter document approximates the aggregate of the 2009 TFRs leading me to conclude that the TFRs were likely[10] not corrected as ordered. This is another indication that not only was the information provided to the Plaintiffs incorrect, but that Lydian knowingly allowed incorrect financial information to remain in the public domain.

---

[5] I have assumed said report to be accurate and the restatements referenced therein are based upon material inaccuracies (otherwise no restatement would be necessary).
[6] The OIG report states: *"OTS required Lydian to re-file several TFRs from 2002 through 2011 and to restate its 2008 and 2009 audited financial statements due to aggressive and erroneous accounting methods."*
[7] As will be determined upon receipt of further discovery.
[8] According to the OIG Report.
[9] In fact, of all the TFR reports reviewed by me, none were referenced as restated, as is ordinarily the case.
[10] Again, this can be known with certainty with further discovery pending.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

This latter fact is particularly important in that the June 2, 2009 Lydian Confidential Private Placement Memorandum (PPM)[11] does not include any Audited or Unaudited financial statements and instead refers the reader to the publicly available TFRs. An excerpt from that PPM is below:

> **REPORTS TO SHAREHOLDERS**
>
> The Bank files Thrift Financial Reports with the OTS. Each Thrift Financial Report consists of a balance sheet, income statement, changes in equity capital and other supporting schedules as of the end of or for the period to which the report relates. In most, but not all, cases the instructions to these reports follow accounting principles generally accepted in the United States of America, consistently applied, including the opinions and statements of the Accounting Principles Board and the Financial Accounting Standards Board. Although Thrift Financial Reports are supervisory and regulatory documents, and not primarily accounting documents, and do not provide a complete range of financial disclosure about the reporting bank, Thrift Financial Reports nevertheless provide important information concerning the financial condition and results of operations of the reporting bank on a consolidated basis. Thrift Financial Reports are on file with, and are publicly available upon written request to, the FDIC, 550 17th Street, N.W., Washington, D.C. 20429, Attention: Disclosure Group, Room F-518, or by calling the FDIC at (800) 945-2186. Thrift Financial Reports are also available by accessing the FDIC's web site at http://www.fdic.gov.

In addition to the PPM discussed above, I was provided various other Lydian Offering Presentations and at least one other Private Placement Memorandum (Other PPM) purportedly provided to Plaintiffs in connection with their investments into the Preferred Stock. Upon review of the Other PPM, I noted that the table of contents lists Audited Financial Statements; however none were ever attached or included. Also, the Other PPM tables of contents indicate inclusion of Unaudited Quarterly Financial Statements and/or Selected Consolidated Financial Data Tables. There were no instances however, when such financial information was actually attached to, or included in the respective Other PPM.

---

[11] The June 2, 2009 PPM was the last PPM made available to Plaintiffs prior to the Plaintiffs' investments.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

**Projections/Budgets**

Regarding my opinion that the financial projections made available to Plaintiffs were wholly faulty and appear to disregard and even contradict economic conditions critical to such projections, it appears from a review of the limited information available that the projections or budgets set forth in the Offering Presentations are flawed. For example, the Offering Presentations show projected or budgeted Net Income (Loss) amounts for 2009 and 2010 that were constantly changing by significant amounts, as is evident from the table below:

| | Various Lydian Offering Presentations 2009 & 2010 | | | | | |
|---|---|---|---|---|---|---|
| Description | 12/1/2008 | 2/14/2009 | 5/15/2009 | 11/9/2009 | 1/22/2010 | Actual* |
| Lydian projected Net Income (Loss) for 2009 | $ 15,677 | $ 31,568 | $ 4,714 | $ (6,990) | $ (9,572) | $(15,902) |
| Lydian projected Net Income (Loss) for 2010 | $ 31,824 | $ 33,480 | $ 21,571 | $ 11,776 | not reported | $(10,970) |

\* - Per Lydian 2010 Financial Overview - bate No. BBSH00558

Although full discovery has not been made available regarding the basis for the projected or budgeted Net Income (Loss) amounts set forth in the various Offering Presentations, the table above shows that on or around February 14, 2009, the Defendant presented Plaintiffs with information indicating Lydian significantly increased its expectation of 2009 Net Income from its estimate published about seventy-five days earlier. The represented increase in expected 2009 Net income from $15.7 million to $31.6 million (over a 100% increase in 2½ months) appears to be completely baseless when considering this increase was made while the value of homes in South Florida and California (What I understand to be Lydian Bank's principal markets) had just recently significantly declined, as will be discussed more fully below.

The information provided to Plaintiffs before and after their investments into the Preferred Stock shows drastic variation in, and apparent unrealistic expected results of operations. Unlike typical updates to budgets or projections that could be expected to reflect modest changes over time, the projected Net

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

Income Defendant provided to Plaintiffs shows radical changes to both 2009 and 2010 projections, and those projections appear to lag significantly behind actual results of operations at Lydian. For example, not only were Lydian's actual results of operations ultimately drastically worse than even the most pessimistic projections put forth by the Defendant, the fact that the Lydian's "budget" for all of 2009 prepared some ten months into 2009 (November 9, 2009) predicted a total Net Loss of approximately $7.0 million for the year while Lydian actually suffered a Net Loss for that year of approximately $15.9 million is, in my view incredible.

Additionally, during the fourth quarter of 2009 Lydian published an Offering Presentation titled *Corporate Overview December 9, 2009* reporting the total 2009 Net Loss through September 2009 was approximately $10.6 million and that Offering Presentation also reported *"Lydian returned to profitability in Q3 2009."* In my view it is inconceivable that the Defendant could in good faith publish a report stating Lydian returned to profitability in the third quarter while Lydian was in the process of losing another $5 million plus during just the last quarter of 2009[12]. Ultimately, Lydian's Net Loss for 2009 of some $15.9 million was 66% more than the highest previously projected Net Loss put forth by the Defendant; and that "projection" was published on January 22, 2010 after 2009 had already ended.

In 2010, Lydian suffered an actual Net Loss of $11.0 million while the least promising 2010 projection provided by the Defendant to the Plaintiffs called for Lydian to achieve Net Income of $11.8 million; a difference of $22.8 million. It seems either the Defendant had an unimaginably poor ability to accurately project results of operations or perhaps intentionally overstated them. Either way, Lydian Bank's projected or budgeted Net Income presented to the Plaintiffs was unrealistic and inconsistent with the economic environment in which it was operating.

---

[12] Lydian reported a Net Loss for the nine months ended 9/30/09 of $10.6 million, then ultimately lost a total of $$15.9 million for all of 2009, leaving one to conclude Lydian lost another $5+ million during the last quarter of 2009.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

As mentioned above, while the Defendant was projecting substantial Net Income, the values of homes in South Florida and California had just recently significantly declined; leading most anyone with banking and lending experience to conclude more loan defaults were on the horizon. To put the real estate crash somewhat into perspective, while the Defendant was allegedly soliciting investment by the Plaintiffs into the Preferred Stock, the entire US economy, lead by the real estate crash, was in dire condition. This should have been known to the Defendant. For example, in a September 2008 meeting with legislators to propose a $700 billion bailout (principally of banks) Fed Chairman Ben Bernanke said "If we don't do this, we may not have an economy on Monday."[13]

In Florida and California, tribulations in the real estate market are evident upon review of the Case-Shiller Home Price Index[14] (Case-Shiller Index) for the Miami Metropolitan area and the three major metropolitan areas in California. From January 2007, approximately the high of the real estate market, to June 2009, the month the Plaintiffs invested in the Preferred Stock, real estate values in the referenced areas fell on average approximately 42%, as follows:

| Metropolitan Area | January, 07 | June, 09 | Decrease |
|---|---|---|---|
| Miami | 278.74 | 146.51 | 47.44% |
| Los Angeles | 270.69 | 160.88 | 40.57% |
| San Diego | 240.15 | 146.56 | 38.97% |
| San Francisco | 214.44 | 123.95 | 42.20% |
| Average Decline | | | 42.29% |

---

[13] The Reckoning – As Credit Crisis Spiraled, Alarm Led to Action, by Joe Nocera, October 2008.
[14] Source: the S&P Case-Shiller index. This index is a measure of relative values of homes in the top 20 major metropolitan areas of the U.S.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

A graphic of the seasonally adjusted Case-Shiller Indexes from January 2007 through June 2009 makes clear the economic environment Lydian Bank was operating in at the time it was preparing the various Offering Presentations, as shown below:



**Statutory Interest**

As discussed above, I have quantified statutory interest assuming Plaintiffs prevail on their legal claims and assuming the court finds Plaintiffs are entitled to statutory interest. Damages to which statutory interest is to be applied are assumed to be aggregately $10 million; comprised of $9 million for Plaintiff BVS Acquisition Co, LLC, and $1 million for Plaintiff Arthur W. Hooper. Statutory interest was calculated using State of Florida Statutory interest rates in effect during the period and was determined utilizing the simple interest method (i.e. non-compounding). Based upon my calculations and the assumptions above, I have determined statutory interest to be approximately $446 thousand for the period

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

August 19, 2011[15] through July 16, 2012, and $1,300 per calendar day thereafter. Summary statutory interest calculations for each Plaintiff are below:

BVS Acquisition

| a<br>Damages<br>Outstanding | Statutory<br>Rate | b<br>Daily Rate | Period From | Period To | c<br># Days<br>O/S | =a x b x c<br>Statutory<br>Interest |
|---|---|---|---|---|---|---|
| $ 9,000,000 | 6.00% | 0.01643% | 08/19/11 | 09/30/11 | 42 | $ 62,105 |
| $ 9,000,000 | 4.75% | 0.01300% | 09/30/11 | 12/31/11 | 92 | 107,640 |
| $ 9,000,000 | 4.75% | 0.01300% | 12/31/11 | 07/16/12 | 198 | 231,660 |
| | | | | Total thru 7/16/12 | | $ 401,405 |
| | | | | Daily interest | | $ 1,170 |

Arthur W. Hooper, Jr. and Arthur W. Hooper IRA

| a<br>Damages<br>Outstanding | Statutory<br>Rate | b<br>Daily Rate | Period From | Period To | c<br># Days<br>O/S | =a x b x c<br>Statutory<br>Interest |
|---|---|---|---|---|---|---|
| $ 1,000,000 | 6.00% | 0.01643% | 08/19/11 | 09/30/11 | 42 | $ 6,901 |
| $ 1,000,000 | 4.75% | 0.01300% | 09/30/11 | 12/31/11 | 92 | 11,960 |
| $ 1,000,000 | 4.75% | 0.01300% | 12/31/11 | 07/16/12 | 198 | 25,740 |
| | | | | Total thru 7/16/12 | | $ 44,601 |
| | | | | Daily interest | | $ 130 |

**Potential Additional Misrepresentations**

Apparently Lydian began operating under a Memorandum of Understanding (MOU) with the OTS beginning May 21, 2009.[16] A MOU is an informal **enforcement action** under which a commitment is made by a thrift (Lydian in this case) to the OTS to correct a violation of law, violation of a regulation, or an unsafe or unsound practice.[17] The disclosures germane to the MOU made by the Defendant in the June 2, 2009 PPM provided to the Plaintiffs minimized the significance of the MOU and even appear misleading with regard to compliance with the MOU. For example the June 2, 2009 PPM characterizes

---

[15] The date the OCC closed Lydian Bank and appointed the FDIC as receiver.
[16] OIG Report
[17] Ibid.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

the MOU as *"an informal memorandum of understanding"*.[18] While, although informal, it is actually an enforcement action.

In addition, the June 2, 2009 PPM states *"[Lydian] Bank had already completed the implementation of practices and procedures on its own initiative that [Lydian] Bank believes satisfy many of the terms of the Memorandum"*[19]. This seems inconsistent however with the OIG Report which states *"OTS's review disclosed several instances of noncompliance with the... MOU. The board and management failed to comply with enforcement documents..."*[20] Upon receipt of the MOU through ongoing discovery, a determination can be made regarding i) to what extent Lydian had been found to have violated laws, violated regulations, and/or engaged in unsafe or unsound practices just days before accepting Plaintiffs' $10 million investment and ii) to what extent such occurrences may represent material omissions by Defendant.

In my review of the TFR reports, I noted that Lydian's financial statements included aggregate "Allowance for Loan and Lease Losses" of approximately $32.6 million as of March 31, 2009 then shortly after the Plaintiffs invested $10 million into the Preferred Stock, on June 30, 2009 Lydian apparently charged an additional approximately $27.6 million to bad debt expense. Nothing within the information provided to date indicates the Defendant advised Plaintiffs of the impending bad debt charge.

**Internal Controls**

The American Institute of Certified Public Accountants Statements on Auditing Standards No. 115 defines internal controls "a process—effected by those charged with governance, management, and other personnel—designed to provide reasonable assurance about the achievement of the entity's objectives with regard to reliability of financial reporting, effectiveness and efficiency of operations and

---

[18] June 2, 2009 PPM
[19] Ibid.
[20] OIG Report

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

compliance with applicable laws and regulations." Insufficient information is available to allow me to independently opine as to the effectiveness of Lydian's internal controls at, or around the time the Plaintiffs invested into the Preferred Stock and thereafter. I can say however, by definition the fact that the OIG noted that the OTS required Lydian to *"re-file several TFRs from 2002 through 2011 and to restate its 2008 and 2009 audited financial statements due to aggressive and erroneous accounting methods"*[21] constitutes Material Weaknesses over financial reporting. The American Institute of Certified Public Accountants Statements on Auditing Standards No. 115 defines a material weaknes as "a deficiency, or combination of deficiencies, in internal control, such that there is a reasonable possibility that a material misstatement of the entity's financial statements will not be prevented, or detected and corrected on a timely basis." The pervasiveness of the Material Weaknesses will be determined upon complete discovery.

## V.   DATA AND OTHER INFORMATION CONSIDERED

In conducting this engagement to date, I have reviewed and/or considered documents and other information, as follows:

- Amended Complaint - May 21, 2012
- Exhibit A - Private Placement Memorandum - May 15, 2009
- Exhibit B - Private Placement Memorandum - June 2, 2009
- Exhibit C - Letter enclosing Hooper Subscription Agreement - June 22, 2009
- Exhibit D - Letter enclosing BVS Subscription Agreement - June 23, 2009
- Exhibit E - BVS Acquisition Co Response letter - June 23, 2009
- Exhibit F - Email - Ellis to Hooper - June 23, 2009
- Exhibit G - Order to Cease and Desist - September 16, 2010
- OCC - Prompt Corrective Action Directive August 18, 2011
- BVS Scheduling Order April 26, 2012
- Order granting discovery deadline enlargement, June 18, 2012
- Plaintiffs' Expert Witness Disclosures June 18, 2012
- Lydian Corporate Overview - 2010

---

[21] Ibid.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

- Lydian Corporate Overview - December 1, 2008
- Lydian Corporate Overview - February 14, 2009
- Lydian Corporate Overview - January 22, 2010
- Lydian Corporate Overview - Stock Offering Info - May 15, 2009
- Lydian Offering Information - December 9, 2009
- Lydian Offering Information - November 9, 2009
- Great Hill Partners Overview - April 2010
- Lydian Bank Thrift Financial Reports – March 31, 2007 through June 30, 2011
- Sabadell Bank Call Reports – September 30, 2011 through March 31, 2012
- Modification of Revolving Credit Agreement - BVS & Lydian Private Bank - Undated
- Modification of Revolving Credit Agreement - Hooper & Lydian Private Bank - Undated
- Modification of Revolving Credit Agreement - signed by Hooper - June 19, 2009
- Notice to depositors of Lydian Private Bank - August 19, 2011
- Notice to Stockholders - Bank Closure - August 29, 2011
- Purchase Agreement - Sabadell Acquiring Lydian - August 19, 2011
- Subscription Agreement - Lydian Private Bank - Undated
- Subscription Agreement - Signed by Hooper - June 19, 2009
- Affiliated Managers Group - April 2010
- Boldman to Hooper - Preferred Stock Certificates enclosure - August 10, 2009
- Brown to Ceruzzi - Common Equity Offering - July 30, 2010
- Brown to Hooper - Common Equity Offering - July 30, 2010
- Capital Telecom, LLC– Financials as of June 21, 2009
- Comparable Group Analysis - September 30, 2009
- Confidential Private Placement Memorandum - June 30, 2008
- Ellis - Hooper - Email Correspondence regarding equity stock - June 19, 2009
- Ellis to Ceruzzi - Terms Sheet - July 21, 2009
- Ellis - Hoover Email Correspondence regarding closing on preferred stock - February -March - April, 2010
- Ellis - Hooper - Email - Stock Purchase Agreement - May 12, 2010
- Ellis to Hooper - Email - May 13, 2011
- Ellis to Hooper - Email Correspondence - August 20, 2010
- Ellis to Hooper - Email Correspondence - September 30, 2010
- Ellis to Hooper - Email Correspondence regarding Regulatory Approval - October 7, 2010
- Ellis to Hooper - Valuation points - February 2, 2010
- Ellis to Investors - Email Correspondence - August 23, 2010
- Ellis to Investors - Email Correspondence - September 24, 2010
- First Supplement to Confidential Private Placement Memorandum - September 4, 2008
- Hooper to Brown letter - expectations regarding Preferred Stock - November 10, 2010
- Hooper to Ceruzzi - Email regarding the coupon rate - May 18, 2010
- Hooper to Ellis - Questions regarding 2008 Preferred Stock - May 17, 2010
- Huntsman Gay Global Capital Overview - June 2010
- Investor Certification - Lydian Private Bank - Undated

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

- Letter from Sabadel United Bank to Mr. Hooper - August 25, 2011
- Audit Report - Material Loss Review of Lydian Private Bank - March 21, 2012
- PWC documents produced Bate stamped 000001_003840
- Other literature commonly considered or relied upon by business valuation experts
- Various analyses prepared during my review

## VI. PENDING DISCOVERY AND ASSIGNMENT CONTINUATION

As substantial financial discovery is expected to be forthcoming, I expect such information will allow or require me to update, and perhaps expand my opinions. I may be asked to opine whether Lydian Bank was adequately capitalized, whether it had adequate loan loss reserves, and whether any other financial information was materially misstated. Should additional information bearing relevance on my opinions become available, I intend to modify this report as soon as practicable depending upon timing of such discovery. As discovery is ongoing and additional information is provided to me, my opinions may change, I may have additional opinions and the scope of my assignment may be expanded. In addition, I may generate demonstrative exhibits for use at trial.

## VII. QUALIFICATIONS AND FEES

I am currently a Shareholder of Kaufman, Rossin & Co., I received an undergraduate degree in Business Administration-Accounting from Florida International University in 1984, and a Masters of Professional Accountancy from the University of Miami in 1985. My professional certifications include: Certified Public Accountant since 1986, Certified Valuation Analyst since 1998, Accredited Business Valuator since 2006, and Certified in Financial Forensics since 2008.

I am a member of the American Institute of Certified Public Accountants and the Florida Institute of Certified Public Accountants (FICPA). I served on the FICPA Accounting Principles and Auditing

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

Standards Committee from 1996 through 2002 (chairman 2001 – 2002), and I served on the FICPA Professional Liability Committee in 1996-1997.

Within the preceding ten years I have authored four articles. The first is entitled *Sarbanes-Oxley deadline looms like a corporate compliance Y2K*, published in the December 15, 2004 Daily Business Review. The second is entitled *New Standards Affect Companies Missed by Sarbanes Oxley*, published Monday February 19, 2007 in the Miami Herald Business Monday section. The third is entitled *Demystifying Mark-To-Market*, published in Forbes.com on April 21, 2009. The fourth is entitled *Forensic CPAs: A Key Resource for Corporate Counsel* published in BNA's Corporate Counsel Weekly Volume 26, Number 24 on June 22, 2011.

Within the preceding four years I have testified at trial and/or by deposition, and/or in hearings as follows:

- Woodbridge Holdings, LLC, v. Prescott Group Aggressive Small Cap Master Fund, G.P. et al Case No. 09-64811 (25), in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to be heard by Judge Carol-Lisa Phillips. Trial testimony on business valuation and Fair Value in a Dissenters' action on May 31, 2012.
- Woodbridge Holdings, LLC, v. Prescott Group Aggressive Small Cap Master Fund, G.P. et al Case No. 09-64811 (25), in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to be heard by Judge Carol-Lisa Phillips. Deposition testimony on business valuation and Fair Value in a Dissenters' action on May 2, 2012.
- Ryan Gill v. Patrick Moran and Ruden, McClosky, Smith Schuster, and Russell, P.A. Case No. 09-047531 (13), in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to be heard by Judge Jeffrey E. Streitfeld. Deposition testimony on business valuation damages on April 23, 2012.
- Cornerstone SMR, Inc. v. Janette Schafer, JustTime, Inc. and Bank of America, Case No. 08-40096 CACE 03, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, heard by Judge Milly Rodriguez-Powell. Trial testimony on internal controls, comparative negligence and damages on January 26, 2011.
- Allen R. Greenwald et al v. Eisiner, Brown, Lewis & Frankel, P.A., et al, Case No. 08-37123 CA 08, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, heard by Judge Jerald Bagley. Trial testimony on compensatory damages on January 25, 2012.
- Molina Healthcare of Florida, Inc. and Physician Consortium Services, LLC, HS1NetPass, LLS and Care NetPass, LLC and Molina Healthcare, Inc. Case No. 32-193-00516-10, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to be heard by Arbitration Association. Deposition testimony on damages in November, 2011. Matter settled in December 2011.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

- Petroleum Realty I, LLC et al v. REB of Florida, Inc. et.al. , Case No. 50-2004CA005889, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to be heard by Judge David E. French. Hearing testimony on discovery issues before Special Master, Retired Judge Robert Colton in October, 2011.
- Ocean-Fairwind, LLC v Mellon United National Bank, Case No. 09-24842 CA 40, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Complex Business Litigation Section, to be heard by Judge Peter Lopez. Deposition testimony on Breach of Contract damages in August 2011.
- Sheridan Healthcorp, Inc. v AvMed, Inc., Case No. 06-02992 (07), in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to be heard by Judge Jeffery Streitfeld. Deposition testimony on billing dispute/business damages in July, 2011.
- Mohammad Al Saleh v Harry Sargeand, III; Mustafa Abu-Naba'a and International Oil Trading Company, LLC, Case No. 50-2008-CA-010187, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, heard by Judge Robin Rosenberg. Deposition and trial testimony on Fraud damages in July, 2011.
- Carlos Leon v, United Parcel Service, Inc., Case No. 10-cv-23937-MGC, in the United Status District Court, Southern District of Florida, Miami Division, to be heard by Judge Huck.. Deposition testimony on FMLA/wrongful termination damages in June, 2011.
- Petroleum Realty I, LLC et al v. REB of Florida, Inc. et.al. , Case No. 50-2004CA005889, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to be heard by Judge David E. French. Hearing testimony on discovery issues before Special Master, Retired Judge Robert Colton in May, 2011.
- Cornerstone SMR, Inc. v. Janette Schafer, JustTime, Inc. and Bank of America, Case No. 08-40096 CACE 03, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to be heard by Judge Milly Rodriguez-Powell. Deposition testimony on internal controls, comparative negligence and damages in February, 2011.
- Petroleum Realty I, LLC et al v. REB of Florida, Inc. et.al. , Case No. 50-2004CA005889, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to be heard by Judge David E. French. Hearing testimony on discovery issues before Special Master, Retired Judge Robert Colton in December, 2010.
- Allen R. Greenwald et al v. Eisiner, Brown, Lewis & Frankel, P.A., et al, Case No. 08-37123 CA 08, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to be heard by Judge Gisela Cardonne Ely. Deposition testimony on compensatory damages in September, 2010.
- Florida Diversified Films v. Simon Roofing and Sheet Metal Corp., Case No. 06-22941 CA 24, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, heard by Judge Victoria Platzer. Trial testimony on destruction of business value damages and lost profits damages in June, 2010.
- Florida Diversified Films v. Simon Roofing and Sheet Metal Corp., Case No. 06-22941 CA 24, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to be heard by Victoria Platzer. 2nd deposition; testimony on destruction of business value damages and lost profits damages in April, 2010.
- Carlos Lafaurie and South Dakota Trust Company, et al v UBS AG, case No. 09-20933-CIV-SEITZ-O'SULLIVAN, in the United States District Court, Southern District of Florida, to be heard by Judge Seitz, deposition testimony on securities damages in January, 2010. Matter settled.

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

- Lisa Lopez-Dusart v. Marriott Ownership Resorts, Inc., et al, Case No. 05:24730 CA 25, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, heard by Judge Adrian, trial testimony regarding personal damages December, 2009.
- Ernesto Valdes, M.D., et al v Critical Care Newborn Services, Case No. 99-17071 CA 32, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. Hearing testimony heard by Judge Manno-Schurr on October 14, 2009.
- Lykes Bros. Inc. v. Aaction Mulch, Inc., Case No. 2:08-CV-399-FTM 99 SPC, in the United States District Court for the Middle District of Florida, Ft. Myers Division, to be heard by Magistrate Sheri Polster Chappell, deposition testimony on unjust enrichment and lost profits damages in October 2009. Matter settled.
- Alexander Angueira, P.L.L.C. v. Maximo Haddad, Arbitration matter, heard by Michael A. Hanzman. AAA Hearing testimony on discounted cash flows associated with planned community development assets and business valuation in June 2009.
- Preferred Care Partners Holding Corp. and Preferred Care Partners, Inc., v Humana, Inc., Case No. 08-20424-CIV-UNGARO/SIMONTON, in the United States District Court, Southern District of Florida, to be heard by Judge Ungaro, 2nd deposition testimony on lost profits and poaching damages in May, 2009. Matter settled in July, 2009.
- Florida Diversified Films v. Simon Roofing and Sheet Metal Corp., Case No. 06-22941 CA 24, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to be heard by Judge Leesfield. Deposition testimony on destruction of business value damages in May, 2009.
- Preferred Care Partners Holding Corp. and Preferred Care Partners, Inc., v Humana, Inc., Case No. 08-20424-CIV-UNGARO/SIMONTON, in the United States District Court, Southern District of Florida, to be heard by Judge Ungaro, deposition testimony in November, 2008 on lost profits damages, poaching damages and diminished business value damages.
- Vincent Post and Michael Clutter v Great Florida Bank, Case No. 08-20007-CIV-ALTONAGA/BROWN, in the United States District Court, Southern District of Florida, to be heard by Judge Altonaga, deposition testimony in August, 2008 on employment discrimination personal damages. Matter settled in September, 2008.
- Latino Broadcasting Company, L.C. v Grupo Latino De Radiodifusion, L.L.C., Caracol Broadcasting, Inc. and WSUA Broadcasting Corporation, Case No. 05-07180 CA 22, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to be heard by Judge David C. Miller, hearing testimony on evidentiary discovery in January, 2008, deposition testimony on lost profit damages in May, 2008. Matter settled in May 2008.
- Alberto J. Aran, M.D., A. James Segal, et al v Neighborhood Health Partnership, Inc., Case No A-092904-273, in the American Health Lawyers Association ADR service, to be heard by Glenn Waldman, Dade County, Florida, deposition testimony on accounting issues and breach of contract damages in March, 2008, hearing testimony in April, 2008. Matter settled in April, 2008.

Kaufman, Rossin & Co., P.A. is being compensated based upon the various levels of skill and responsibility required at hourly rates ranging from $60 per hour to $510 per hour. My hourly rate is

BVS ACQUISITION CO., LLC, and ARTHUR W. HOOPER, JR. v. RORY A. BROWN.
Report of Patrick F. Gannon, July 16, 2012

$475, subject to change each June 1st, commensurate with firm wide rate increases at the firm's fiscal year end. No portion of our fees is contingent upon the outcome of this matter.

It should be understood that this report is based only upon the evidence and documents produced and reviewed to date. As discussed throughout this report, relevant information has not yet been provided, and many depositions have yet to be taken. If and when relevant information or deposition transcripts are provided, this information may change my opinions. As such, it may be necessary to supplement or modify this report.

    Respectfully submitted,

    KAUFMAN, ROSSIN & CO., P.A.

    /S/ *Patrick F. Gannon*

    Patrick F. Gannon, CPA, ABV, CFF, CVA
    Shareholder, July 16, 2012