IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:12-cv-80247-DMM

BVS ACQUISITION CO. LLC, *et al.*,

      Plaintiffs,

v.

RORY A. BROWN,

      Defendant.
_____/

**ORDER ON MOTION TO DISMISS COUNTERCLAIM**

This Cause is before the Court upon Plaintiffs BVS Acquisition Co., LLC and Arthur W. Hooper's (collectively, "Plaintiffs") Motion to Dismiss Defendant's Counterclaim and Incorporated Memorandum of Law (DE 198) ("Motion"), filed on October 12, 2012. On October 25, 2012, Defendant Rory A. Brown ("Defendant") filed a Response (DE 212) to the Motion; to which Plaintiffs filed a Reply (DE 222), on November 5, 2012. On November 14, 2013, Defendant filed a Sur-reply (DE 227) to the Motion. I have reviewed the Motion and the record on the matter and am otherwise fully advised in the premises.

**I.    Background**

This action arises from Defendant's purported statements as Lydian Private Bank's ("Lydian Bank") chairman and CEO concerning the financial situation of the bank. Plaintiffs assert that as a result of their reliance on Defendant's misrepresentations, they purchased 10 million dollars Lydian Bank stock. Prior to purchasing the stock at issue, Plaintiffs were provided an opportunity to read and review a Confidential Private Placement Memorandum[1] ("PPM") before signing a Subscription Agreement (DE 151-3), which together constituted the

---

[1] It is undisputed that the relevant provisions of the May PPM (DE 151-1) and the June PPM (DE 151-2) are identical.

1

entire agreement between the parties. The Subscription Agreement also contained the following indemnification provision:

> 4. <u>Indemnification</u>. My investment in the Shares if accepted by you, was based upon my representations, warranties and acknowledgements set forth in this Subscription Agreement. I understand the meaning of the representations I have made in this Subscription Agreement, and I hereby agree to indemnify you and all of your officers, directors, employees agents, attorneys and other representatives, and all persons deemed to be in control of the foregoing, and to hold such persons harmless from and against any and all loss, damage, liability or expense, including costs and reasonable attorneys' fees, to which they may be put or which they may incur by reason of, or in connection with:
> 4.1    any misstatement, misrepresentation or omission made by me or on my behalf with respect to matters described in this Subscription Agreement; or
> 4.2    any breach of any representations or warranties or any failure to fulfill any covenants or agreements set forth in this Subscription Agreement, including, but not limited to, any sale transfer or other disposition of all or any part of the Shares by me in violation of the securities Act or other applicable law.

DE 151-3 at 8.

On March 5, 2012, Plaintiffs filed the instant action seeking damages for negligent misrepresentation (Count I) and breach of fiduciary duty (Count II) pursuant to 28 U.S.C. § 1332, as a result of Defendant's purported misrepresentations. DE 151 at ¶ 4-5. The basis of Plaintiffs' claims is that because they relied on Defendant's statements, which Defendant purportedly knew was false, Defendant should be held liable. Specifically, Plaintiffs state that they relied on the following statements made by Defendant in deciding whether to invest in Lydian Bank:

- that the Bank would either be sold or taken public in the near future;
- that the Bank was in a strong condition and had over-reserved for potential losses;
- that Plaintiffs' investment would be used principally to expand the wealth management services of the Bank;
- that the Bank had taken care of its "legacy loans" and considerably trimmed its residential mortgage portfolio; and
- that the FDIC would give the Bank the opportunity to buy failed bank.

2

DE 179 at ¶ 21. Plaintiffs also asserted that Defendant was aware that his statements were false, "based on his position as the dominant CEO of Lydian Bank, his superior knowledge of Lydian Bank's financial condition and operations, his ability to conduct due diligence based upon his position as an officer and director of Lydian Bank, and the scope of information available to him in these capacities." DE 151 at ¶ 49.

On September 21, 2012, Defendant filed a Counterclaim, asserting a claim for indemnification against Plaintiffs pursuant to Section 4 of the Subscription Agreement. *See* DE 167. Specifically, Defendant claims that Plaintiffs breached the following representations in the Subscription Agreements because they certified that they relied on his statements in pursuit of the instant action:

- "I agree that this Subscription Agreement and other information you have furnished do not constitute investment, accounting, legal or tax advice[;] [i]n making this investment I am relying, if at all *solely* upon the advice of my personal advisers with respect to my investment . . . [n]either you *nor any of your officers, directors, employees,* agents, counsel or accountants *has made any representation regarding these matters.*" (Subscription Agreements at 2, § 2.7, emphasis added).
- "I have relied **solely** upon the advice of my advisers (if any) and independent investigations made by me and/or my representative(S) in deciding to invest, and *no oral or other representations have been made to me regarding the Shares*" (*id.* at 3, §3.5, emphasis added)
- "This Subscription Agreement, along with the [PPM] and each of the Exhibits thereto, *constitute the full and entire understanding and agreement between the parties with regard to the subjects of this Subscription Agreement and the [PPM] and supersede any and all prior understandings and agreements, whether written or oral,* with respect to such subject, which shall have no further force or effect. *No party shall be liable* or bound *to any other in any manner by any representations, warranties, covenants and agreements except as specifically set forth in this Subscription Agreement and in the [PPM]*" (*id.* at 6, § 10, emphasis added.)

DE 167 at 11 (emphasis in original).

II. **Legal Standard**

3

In order to state a claim for relief, Federal Rule of Civil Procedure Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the Court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [him]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

When ruling on a 12(b)(6) motion to dismiss, the court may only consider the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which a court may take judicial notice. *Hodge v. Orlando Utilities Comm'n*, No. No. 6:09-cv-1059-Orl-19DAB, 2009 WL 4042930, at *3 (M.D. Fla. Nov. 23, 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The factual allegations in the complaint must be taken as true and

4

read in the light most favorable to the plaintiff. *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993) (citation omitted); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The general rule on a motion to dismiss is that the "scope of the review must be limited to the four corners of the complaint." *Speaker v. U.S. Dep't. of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). "If matters outside the pleadings are presented by the parties and considered by the district court, the Rule 12(b)(6) motion must be converted into a Rule 56 summary judgment motion." *Id.* In such a case, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, there is an "important qualification to this rule where certain documents and their contents are undisputed: '[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.'" *Speaker*, 623 F.3d at 1379 (quoting *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir.2010)).

### III. Legal Discussion

Whether Defendant is entitled to indemnification depends on whether his conduct is contemplated by Section 4 of the Subscription Agreement.[2] Section 4 of the Subscription

---

[2] Plaintiffs argued that there was a contradiction between the language of the Subscription Agreements and the Private Placement Memorandums, and that they were entitled to rely on Defendant's statements under those agreements. However, those arguments have been rendered moot by the Court's Order Granting Summary Judgment. *See* DE 221 at 8 ("Thus, the potential for liability created by the representations of Lydian Bank's officers under the PPM was eliminated upon the execution of the Subscription Agreement."). Likewise, Plaintiffs' arguments concerning misstatements in the Private Placement Memorandum have been rejected by this Court. *Id.* at 10. Additionally, Plaintiffs claimed that enforcement of the indemnification provision of the Subscription Agreement is contrary to Florida law under Fla. Stat. § 57.015(7). However Fla. Stat. §57.105(7) only applies to causes of action seeking the enforcement of a contract. Since Defendant only seeks indemnification because he was forced to defend himself against Plaintiffs' claims, Fla. Stat. § 57.105(7) is inapplicable to the instant matter. *See Mediplex*

5

Agreement provides that Defendant is entitled to indemnification if Plaintiffs breach any of the representations or warranties in the Subscription Agreement.[3] DE 151-3 at 8; *see also Natco Ltd P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001) ("[C]ontract provisions should be given their natural and most commonly understood meaning in light of the subject matter and circumstances."). Thus, Defendant is entitled to indemnification if he was compelled to expend funds as a result of Plaintiffs' breach of representations in the Subscription Agreement. *See Shannon v. Kaiser Aluminum and Chem. Corp.*, 749 F.2d 689 (11th Cir. 1985) ("Under Florida law, the general rule is that an indemnitee under an indemnification agreement is entitled to recover reasonable attorney's fees and legal costs which he is compelled to pay as a result of suits brought against him relating to matters for which he is entitled to be indemnified.").

In executing the Subscription Agreements, Plaintiffs represented that (1) they were relying solely on the advice of their personal advisors with respect to their investment in Lydian

---

*Const. of Fla., Inc. v. Schaub*, 856 So. 2d 13, 15 (Fla. 4th DCA 2003). Because Plaintiffs' aforementioned arguments are misplaced, I now turn to whether Defendant has set forth sufficient facts to sustain a claim.

[3] Section 4 of the Subscription Agreement provides as follows:

> 4. Indemnification. My investment in the Shares if accepted by you, was based upon my representations, warranties and acknowledgements set forth in this Subscription Agreement. I understand the meaning of the representations I have made in this Subscription Agreement, and I hereby agree to indemnify you and all of your officers, directors, employees agents, attorneys and other representatives, and all persons deemed to be in control of the foregoing, and to hold such persons harmless from and against any and all loss, damage, liability or expense, including costs and reasonable attorneys' fees, to which they may be put or which they may incur by reason of, or in connection with:
> 4.1    any misstatement, misrepresentation or omission made by me or on my behalf with respect to matters described in this Subscription Agreement; or
> 4.2    any breach of any representations or warranties or any failure to fulfill any covenants or agreements set forth in this Subscription Agreement, including, but not limited to, any sale transfer or other disposition of all or any part of the Shares by me in violation of the securities Act or other applicable law.

DE 151-3 at 8. Defendant is clearly contemplated as a party to be indemnified under Section 4 of the Subscription Agreements.

6

Bank; (2) no representations were made to them by Defendant; and (3) there could not be any liability for any representations except for those contained in the Subscription Agreement and Private Placement Memorandum. DE 167 at 11. However, Plaintiffs certified that they relied on Defendant's statements concerning their investments when they filed the instant Complaint. *See* DE 151 at 7, 9, 13. As such, Plaintiffs breached the aforementioned representations in the Subscription Agreement. Since Defendant was forced to defend himself against Plaintiffs claims, which were based on their breach of representations in the Subscription Agreement, the costs which Defendant incurred in defending himself in the instant lawsuit arose from Plaintiff's breach. Consequently, Defendant has set forth sufficient facts to demonstrate that he is entitled to indemnification under the Subscription Agreement.

Defendant claims that because Plaintiffs elected to present material outside of the pleadings in their Motion, the Motion must be converted into a Motion for Summary Judgment under Federal Rule of Civil Procedure 12(d).[4] *Speaker v. U.S. Dep't. of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). Moreover, Defendant argues that since there is no issue of fact as to whether Plaintiffs breached the representations at issue, he is entitled to judgment pursuant to Federal Rule of Civil Procedure 56(f)(1). Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond the court may . . . grant summary judgment for the non-movant.").

Based on the circumstances presented, I am inclined to enter summary judgment in Defendant's favor pursuant to Federal Rule of Civil Procedure 56(f)(1). *See* Fed. R. Civ. P. 56(f)(1). However, Federal Rule of Civil Procedure 56(f)(1) mandates that the Plaintiffs be given

---

[4] Specifically, Plaintiffs chose to rely on their Expert Reports and Statement of Material Facts in Opposition to Defendant's motion for summary judgment in seeking to dismiss the Complaint. *See* DE 122 at 3. Defendant consequently responded to Plaintiff's additional allegations, in their sur-reply. *See* DE 227 at 9-10. As such, conversion of the instant Motion into a Rule 56 summary judgment motion is appropriate.

7

notice and an opportunity to be heard on the issue. As such, Plaintiffs shall submit a supplemental response to Defendant's Sur-reply.[5]

## IV. CONCLUSION

For the Reasons set forth in this Order, it is hereby **ORDERED and ADJUDGED** that Plaintiff's Motion (DE 198) is **DENIED.** It is further

**ORDERED AND ADJUDGED** that Plaintiffs shall, within 10 days of the entry of this Order file a Response to Defendant's contentions concerning Summary Judgment. It is further

**ORDERED AND ADJUDGED** that Plaintiffs' Motion to Strike Affirmative Defenses (DE 197) is **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers, in West Palm Beach, Florida, this 30 day of May, 2013.

DONALD M MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

---

[5] I encourage the Parties to amicably resolve this dispute if possible. If the Parties feel that they need assistance with such a resolution, Magistrate Judge Brannon is available to conduct a settlement conference.