UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-80247-CV-MIDDLEBROOKS

BVS ACQUISITION CO., LLC, *et al.*,

      Plaintiffs/Counter-Defendants,

v.

RORY A. BROWN, an individual,

      Defendant/Counter-Plaintiff.
_____/

## ORDER ON SUMMARY JUDGMENT COUNTERCLAIM

THIS CAUSE comes before the Court upon Motion by Plaintiffs BVS Acquisition Co., LLC and Arthur W. Hooper's (collectively, "Plaintiffs") to Dismiss Defendant's Counterclaim (DE 198) ("Motion to Dismiss").[1] The Court converted Plaintiffs' Motion to Dismiss into a Motion for Summary Judgment under the Federal Rule of Civil Procedure 12(d), and allowed the Parties to submit supplemental responses to determine whether summary judgment should be entered against Plaintiffs under Federal Rule of Civil Procedure 56(f).[2] (DE 249 at 7-8). Plaintiffs filed their Response (DE 251) and Defendant filed his Reply (DE 258). I have reviewed the record and am otherwise advised in the premises.

### I.    Background[3]

This action arises from Defendant's purported statements as Lydian Private Bank's ("Lydian Bank") chair and CEO concerning the financial situation of the bank. Plaintiffs assert

---

[1] Defendant Rory A. Brown ("Defendant") filed a Response (DE 212) to the Motion to Dismiss; to which Plaintiffs filed a Reply (DE 222). Defendant filed a Sur-reply (DE 227) to the Motion to Dismiss.
[2] In Defendant's Sur-Reply, he moved to have Plaintiff's Motion to Dismiss converted to a Motion for Summary Judgment, summary judgment granted in Defendant's favor as to Plaintiffs' liability to Defendant for indemnity under § 4 of the Subscription Agreement, and the Parties proceed under Local Rule 7.3 to determine the amount owed by Plaintiffs. (DE 227 at 9-10)
[3] As the facts remain unchanged from my Order on Motion to Dismiss Counterclaim, I used detailed them here.

1

that as a result of their reliance on Defendant's misrepresentations, they purchased $10 million Lydian Bank stock. Prior to purchasing the stock at issue, Plaintiffs were provided an opportunity to read and review a Confidential Private Placement Memorandum[4] ("PPM") before signing a Subscription Agreement (DE 151-3), which together constituted the entire agreement between the parties. The Subscription Agreement also contained the following indemnification provision:

> 4. <u>Indemnification</u>. My investment in the Shares if accepted by you, was based upon my representations, warranties and acknowledgements set forth in this Subscription Agreement. I understand the meaning of the representations I have made in this Subscription Agreement, and I hereby agree to indemnify you and all of your officers, directors, employees agents, attorneys and other representatives, and all persons deemed to be in control of the foregoing, and to hold such persons harmless from and against any and all loss, damage, liability or expense, including costs and reasonable attorneys' fees, to which they may be put or which they may incur by reason of, or in connection with:
> 4.1    any misstatement, misrepresentation or omission made by me or on my behalf with respect to matters described in this Subscription Agreement; or
> 4.2    any breach of any representations or warranties or any failure to fulfill any covenants or agreements set forth in this Subscription Agreement, including, but not limited to, any sale transfer or other disposition of all or any part of the Shares by me in violation of the securities Act or other applicable law.

DE 151-3 at 8.

Plaintiffs filed the instant action seeking damages for negligent misrepresentation (Count I) and breach of fiduciary duty (Count II) pursuant to 28 U.S.C. § 1332, as a result of Defendant's purported misrepresentations. (DE 151 at ¶ 4-5). The basis of Plaintiffs' claims was that because they relied on Defendant's statements, which Defendant purportedly knew was false, Defendant should be held liable. Specifically, Plaintiffs stated that they relied on the following statements made by Defendant in deciding whether to invest in Lydian Bank:

- that the Bank would either be sold or taken public in the near future;

---

[4] It is undisputed that the relevant provisions of the May PPM (DE 151-1) and the June PPM (DE 151-2) are identical.

2

- that the Bank was in a strong condition and had over-reserved for potential losses;
- that Plaintiffs' investment would be used principally to expand the wealth management services of the Bank;
- that the Bank had taken care of its "legacy loans" and considerably trimmed its residential mortgage portfolio; and
- that the FDIC would give the Bank the opportunity to buy failed bank.

(DE 179 at ¶ 21). Plaintiffs also asserted that Defendant was aware that his statements were false, "based on his position as the dominant CEO of Lydian Bank, his superior knowledge of Lydian Bank's financial condition and operations, his ability to conduct due diligence based upon his position as an officer and director of Lydian Bank, and the scope of information available to him in these capacities." (DE 151 at ¶ 49).

On September 21, 2012, Defendant filed a Counterclaim, asserting a claim for indemnification against Plaintiffs pursuant to Section 4 of the Subscription Agreement. (*See* DE 167). Specifically, Defendant claimed that Plaintiffs breached the following representations in the Subscription Agreements because they certified that they relied on his statements in pursuit of the instant action:

- "I agree that this Subscription Agreement and other information you have furnished do not constitute investment, accounting, legal or tax advice[;] [i]n making this investment I am relying, if at all *solely* upon the advice of my personal advisers with respect to my investment . . . [n]either you *nor any of your officers, directors, employees,* agents, counsel or accountants *has made any representation regarding these matters.*" (Subscription Agreements at 2, § 2.7, emphasis added).
- "I have relied *solely* upon the advice of my advisers (if any) and independent investigations made by me and/or my representative(S) in deciding to invest, and *no oral or other representations have been made to me regarding the Shares*" (*id.* at 3, §3.5, emphasis added)
- "This Subscription Agreement, along with the [PPM] and each of the Exhibits thereto, *constitute the full and entire understanding and agreement between the parties with regard to the subjects of this Subscription Agreement and the [PPM] and supersede any and all prior understandings and agreements, whether written or oral,* with respect to such subject, which shall have no further force or effect. *No party shall be liable* or bound *to any other in any manner by any*

3

> *representations, warranties, covenants and agreements except as specifically set forth in this Subscription Agreement and in the [PPM]*" (*id.* at 6, § 10, emphasis added.)

(DE 167 at 11 (emphasis in original)).

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial*." *Id.* at 587 (emphasis in original) (citing FED. R. CIV. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be

4

enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

Essentially, so long as the non-moving party has had a full opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Id.* at 249-50. The Court does not weigh conflicting evidence, *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007), *reh'g and reh'g en banc denied*, 254 F.App'x 803 (11th Cir. 2007), and the Court does not determine the credibility of witnesses. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citation omitted). Upon discovering a genuine material dispute of fact, the Court must deny summary judgment and proceed to trial. *Id.* at 1292.

### III. Legal Discussion

As I explained in my Order on Motion to Dismiss Counterclaim (DE 249), whether Defendant is entitled to indemnification depends on whether his conduct is contemplated by Section 4 of the Subscription Agreement.[5] Section 4 of the Subscription Agreement provides that

---

[5] Plaintiffs argued that there was a contradiction between the language of the Subscription Agreements and the Private Placement Memorandums, and that they were entitled to rely on Defendant's statements under those agreements. However, those arguments have been rendered moot by the Court's Order Granting Summary Judgment. *See* DE 221 at 8 ("Thus, the potential for liability created by the representations of Lydian Bank's officers under the PPM was eliminated upon the execution of the Subscription Agreement."). In the Subscription Agreement, Plaintiffs made representations and warranties regarding the suitability of the Bank, specifically, and the decision to invest, generally. Likewise, Plaintiffs' arguments concerning misstatements in the Private Placement Memorandum have been rejected by this Court. *Id.* at 10. Additionally, Plaintiffs claimed that enforcement of the indemnification provision of the Subscription Agreement is contrary to Florida law under Fla. Stat. § 57.015(7). However Fla. Stat. §57.105(7) only applies to causes of action seeking the enforcement of a contract. Since Defendant only seeks indemnification because he was forced to defend himself against Plaintiffs' claims, Fla. Stat. § 57.105(7) is inapplicable to the instant matter. *See Mediplex Const. of Fla.,*

Defendant is entitled to indemnification if Plaintiffs breach any of the representations or warranties in the Subscription Agreement.[6] DE 151-3 at 8; *see also Natco Ltd P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001) ("[C]ontract provisions should be given their natural and most commonly understood meaning in light of the subject matter and circumstances."). Thus, Defendant is entitled to indemnification if he was compelled to expend funds as a result of Plaintiffs' breach of representations in the Subscription Agreement. *See Shannon v. Kaiser Aluminum and Chem. Corp.*, 749 F.2d 689 (11th Cir. 1985) ("Under Florida law, the general rule is that an indemnitee under an indemnification agreement is entitled to recover reasonable attorney's fees and legal costs which he is compelled to pay as a result of suits brought against him relating to matters for which he is entitled to be indemnified.").

In executing the Subscription Agreements, Plaintiffs represented that (1) they were relying solely on the advice of their personal advisors with respect to their investment in Lydian Bank; (2) no representations were made to them by Defendant; and (3) there could not be any

---

*Inc. v. Schaub*, 856 So. 2d 13, 15 (Fla. Dist. Ct. App. 4th 2003). Because Plaintiffs' aforementioned arguments are misplaced, I now turn to whether Defendant has set forth sufficient facts to sustain a claim.

[6] Section 4 of the Subscription Agreement provides as follows:

> 4. **Indemnification.** My investment in the Shares if accepted by you, was based upon my representations, warranties and acknowledgements set forth in this Subscription Agreement. I understand the meaning of the representations I have made in this Subscription Agreement, and I hereby agree to indemnify you and all of your officers, directors, employees agents, attorneys and other representatives, and all persons deemed to be in control of the foregoing, and to hold such persons harmless from and against any and all loss, damage, liability or expense, including costs and reasonable attorneys' fees, to which they may be put or which they may incur by reason of, or in connection with:
> 4.1 any misstatement, misrepresentation or omission made by me or on my behalf with respect to matters described in this Subscription Agreement; or
> 4.2 any breach of any representations or warranties or any failure to fulfill any covenants or agreements set forth in this Subscription Agreement, including, but not limited to, any sale transfer or other disposition of all or any part of the Shares by me in violation of the securities Act or other applicable law.

DE 151-3 at 8. Defendant is contemplated as a party to be indemnified under Section 4 of the Subscription Agreement.

6

liability for any representations except for those contained in the Subscription Agreement and Private Placement Memorandum. DE 167 at 11. However, Plaintiffs certified that they relied on Defendant's statements concerning their investments when they filed the instant Complaint. (*See* DE 151 at 7, 9, 13). As such, Plaintiffs breached the aforementioned representations in the Subscription Agreement. Since Defendant was forced to defend himself against Plaintiffs claims, which were based on their breach of representations in the Subscription Agreement, the costs that Defendant incurred in defending himself in the instant lawsuit arose from Plaintiff's breach. Consequently, Defendant has set forth sufficient facts to demonstrate that he is entitled to indemnification under the Subscription Agreement.

As I mentioned previously, I converted Plaintiffs' Motion to Dismiss into a Motion for Summary Judgment under Federal Rule of Civil Procedure 12(d). (DE 249). In my Order, I stated, "I am inclined to enter summary judgment in Defendant's favor," but I gave Plaintiffs an opportunity to submit a supplemental response. (DE 249 at 7-8). In their Response (DE 251), Plaintiffs restated and cited to arguments that they made in their filings in response to Defendant's Motion for Summary Judgment and in their Motion for Reconsideration.[7] (*See* DE 180, DE 253-54, DE 260, DE 264, DE 268). I rejected Plaintiffs' arguments in my Order Granting Defendant's Motion for Summary Judgment, (DE 221), and in my Order on Plaintiffs' Motion for Reconsideration, (DE 272), as well as in this Order, *see supra* note 5. I find it unnecessary to address those arguments further.

### IV. CONCLUSION

For the reasons explained above, it is hereby

---

[7] Plaintiffs argued that I misconstrued the representations they made in the Subscription Agreement, that Plaintiffs and the Bank agreed that Plaintiffs could rely on Defendant in making their decisions to invest in the Bank; that Plaintiffs' representations are in conflict, and that Plaintiffs' suitability representations do not relate to their due diligence representations.

7

**ORDERED AND ADJUDGED** as follows:

1. Summary Judgment is **GRANTED** for Defendant pursuant to Federal Rule of Civil Procedure 56(f);

2. Plaintiffs are liable to Defendant for indemnification under Section 4 of the Subscription Agreement;

3. Judgment is due to be entered in favor of Defendant as to Defendant's Counterclaim (DE 167). Judgment will be entered in favor of Defendant and against Plaintiff by separate order; and

4. The Parties must follow the procedures under Local Rule 7.3 to determine the amount of attorney's fees and costs owed by Plaintiffs to Defendant.

**DONE AND ORDERED** in Chambers, in West Palm Beach, Florida, this 25 day of August, 2014.

DONALD M MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record